## FIDELITY & CASUALTY COMPANY OF NEW YORK, a Corporation,

### vs.

## JOSEPHINE LANAHAN DULANY.

*Insurance: against burglary, larceny or theft; proof of loss; waiver; prayers and instructions; inconsistent with testimony. Evidence: res inter alios.*

A policy of burglary insurance ·provided that the insurer should be liable only in the event that the articles insured were lost as a result of burglary, larceny or theft; evidence examined and held to warrant the submission of the question of such loss for the determination of the jury.                              p. 493

A provision in a policy of burglary insurance providing that the mere disappearance of an article should not be sufficient evidence of loss by burglary, etc., is valid and reasonable.

p. 493

The provisions in an insurance policy requiring the furnishing by the insured of preliminary proofs of loss are required for the benefit of the insurer exclusively, in order that the nature, character and extent of the loss may be ascertained.      p. 495

Good faith demands of insurance companies frank and open dealing with their policy holders, and any acts of the insurer or its representative which may mislead the insured and induce him to believe that the furnishing of such proofs of loss will not be required, or that they would be insufficient or nugatory, amount to a waiver by the insurer of the right to insist upon strict compliance with the terms of the policy.      pp. 495, 496

Whether or not there has been a waiver of such right is a question of fact; such waiver may be inferred from conduct of the insured inconsistent with an intention to insist on the performance of such a condition.                              p. 496

Prayers not supported by the facts disclosed by the testimony or inconsistent therewith are erroneous.                                    p. 496

During the progress of a suit upon an insurance policy, the defendant sought to introduce a letter from an agent of the insured to the husband of the plaintiff, written a year prior to the issuance of the policy, informing the husband of the stipulated provisions to be therein named. In the absence of evidence, tending to prove that the insured knew of the contents of such a communication, the letter was held to be inadmissible in evidence.                                                                     p. 496

Knowledge by the insured of the terms of a policy of insurance is presumed.                                                                     p. 496

*Decided June 24th, 1914.*

Appeal from the Court of Common Pleas of Baltimore City. (DOBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Vernon Cook,* for the appellant.

*Henry H. Dinneen* and *W. Stuart Symington, Jr.,* for the appellee.

BURKE, J., delivered the opinion of the Court.

Mrs. Josephine Lanahan Dulany, the appellee on this record, was the holder of a policy of insurance issued to her by the appellant, a New York corporation. This policy was known as a burglary insurance policy, and was in force at the time of the losses hereinafter mentioned. It covered the articles mentioned in this suit, some of which were located in the rooms occupied by the appellee in an apartment house in Baltimore City, known as "The Washington," and the others were stored in a locked store room, in the exclusive possession of the appellee, in the basement of said apartment house. By the terms of the policy, the "appellant agreed to

indemnify the appellee for direct loss by burglary, larceny, or theft, committed by any person or persons within the premises of any of the property (including money to the extent of fifty dollars)" described in a schedule attached to the policy. The provisions of the policy involved in this suit are herein transcribed: "First, if the insured is the occupant of an apartment in an apartment or flat house, this insurance covers to the extent of fifty dollars, and no more, goods in a locked store room situated in the basement of the said house, and provided by the landlord for the exclusive use of the assured. Second, the assured, upon the discovery of any burglary, theft or larceny in the premises, or any attempted burglary, theft or larceny therein, shall, at the expense of the company, give immediate notice thereof by telegraph to the company at its home office in New York City or to an authorized agent of the company, and shall also give immediate notice thereof to the police authorities having jurisdiction. Third, proof of loss under oath must be filed with the company at its home office in New York City within sixty days from the date of the discovery of the loss. Such proof of loss shall contain: (a) A complete inventory of all property on account of which claim is made, showing the original cost thereof and the actual cash value of each article at the time of the loss, and the amount of the loss thereon; (b) a statement in detail of the damage done to the property of the assured; (c) a statement as to the ownership of each article of property for which indemnity is claimed, and clearly defining the interests, if any, of the assured therein; (d) a statement in detail of the knowledge and belief of the assured as to the date of the occurrence of the loss and as to the manner in which the loss was sustained—the mere disappearance of the article not to be sufficient evidence of loss by burglary, theft or larceny; (e) a statement in detail of all concurrent insurance and of all similar insurance, whether valid or not, on the property insured; (f) a statement as to the purposes for which and the persons by whom

the premises were occupied at the time of the loss. The delivery or withholding of any form by the company or the receipt or retention of any form of proof by the company, or any act of the company or its representatives in the investigation of any claim, shall not waive any of the company's rights."

On February 20, 1913, Mrs. Dulany filed with appellant a statement and proof of loss under which she claimed seven hundred and ninety dollars for the loss of the following articles: Gold cigarette case, with diamond monogram J. C. D., $350; embroidered dress, Irish lace, $125; fine white dress, hand embroidery, band of fillet, Irish lace, $150; one black satin dress, $60; one white serge suit, $50; one riding coat, $25, and portieres, $5.

On April 11th, 1913, the appellee filed with the appellant a second statement and proof of loss, covering, however, different and distinct articles from those enumerated in her first claim. The articles and their respective values specified in the second claim were as follows: One child's gold and pearl bracelet, $11; one enamel pin, $3; one table cloth, $5; twelve napkins, $3; two vests, $20 a piece; one vest, $10; six silk shirts, $8 a piece; total value, $120. Although due no doubt to an error in addition the total value of the various articles was stated in the proof of loss to be $119.

The articles specified in the first proof of loss, except the gold cigarette case, which was afterwards recovered, and is not claimed for in this case, were stored in a locked storeroom in the basement of the Washington apartment, and which storeroom had been provided for the exclusive use of the appellee. For the loss of those articles the liability of the appellant under the express provisions of the policy was limited to $50.

Mrs. Dulany testified that the basement room in which the articles were packed had a door which was locked, and a window which was also locked; that the key of the door was kept in her apartment and was, to her knowledge, the only

key; that the goods were packed in unlocked trunks; that the persons in the apartment who would have occasions at any time to go to the trunks were herself and her maid; that she had not examined the trunks since they were packed in the fall of 1912 until the discovery of their loss in the latter part of January or the first part of February, 1913; that she then "found the room in utter confusion, the trunks opened, and those things missing." On cross-examination she said that what she meant by "utter confusion" was that "everything was pulled around in the trunks and the trunks were not in the place where they were usually kept," the goods were disarranged as if some one had gone to the bottom of the trunks and pulled things out. None of the articles taken from the basement were recovered. Sometime after the discovery of their loss Mrs. Dulany lost from her rooms in the apartment the articles enumerated in the second proof of loss. None of the goods have been found, except the cigarette case, above mentioned.

The record shows that in the fall of 1912, Mrs. Dulany employed a butler named Francois Gindre, who continued in her employ until January 9, 1913, on which date he was discharged by Mr. Dulany because of a quarrel the butler had with another servant. Gindre returned in three weeks and remained some time with Mrs. Dulany, how long the record does not show. Mrs. Dulany had decided to lease her apartment in the Washington for two months. Gindre said he would like to take a position in New York for two months and would let Mrs. Dulany know his address so she might get him back when she again occupied the apartment. He left on Sunday afternoon in the latter part of February, having notified Mrs. Dulany on the preceding Saturday of his intention to go.

Mrs. Dulany testified she missed the goods mentioned in the second proof of loss after she had put in the claim for the first goods, in which was included the gold cigarette case, but she did not recollect how long afterwards; that her husband's

FIDELITY & CAS. CO. OF N. Y. vs. DULANY. 491

Md.]                    Opinion of the Court.

vests disappeared the same day the butler left. They were found missing the following morning. The cigarette case was picked up by an employe at Union Station in the Valley of Jones Falls the morning following the departure of the butler. Mrs. Dulany testified: "He left on Sunday and I have never heard from him since. That was the latter part of February. He said he would write me and let me know his address; that he would come back to me when I opened the apartment again, but I have never heard from him since, and in going over his room I found his mattress had been slit in a place that big (indicating). I made no effort afterwards to locate him. I placed it in the insurance company's hands. The detectives did not think at that time that he was guilty." Q. "Did you have any reason to think him guilty of the larceny of any of those articles? A. Yes; I certainly think so; the fact of finding the cigarette case in Jones Falls the day after he left and finding the cut in the mattress were two reasons, and another reason for suspecting him was in going to New York without letting me hear from him again. Q. You do not know that he threw the cigarette case in Jones Falls? A. No, I do not know he did; but I certainly think he did. He left on Sunday and it was found on Monday by an employe at the Union Station. Q. This cut in the mattress; describe exactly how the mattress was cut? A. He had a single bed in his room, and the mattress was cut at the top and bottom; a slit that long (indicating) where it was bound around with tape and the hair had been pulled around. I had to have the mattress mended before it could be used again." These facts came to her knowledge after she had filed the first proof of loss in which she stated: "I do not know who to suspect," and there is nothing to show that this statement of hers was not entirely truthful.

The appellant refused to pay for any of the losses and the appellee brought suit on the policy. The declaration contained two counts: The first claimed for the goods lost from the rooms in the apartment, and the second for the loss from

the storeroom in the basement, and each count charged that the goods had been stolen. The defendant filed the general issue plea and one special plea, which averred that it was expressly provided in the policy sued on that it should cover only "for direct loss by burglary, larceny or theft," and that it also provided that the mere disappearance of any article should not be deemed sufficient evidence of its loss by burglary, larceny or theft, and that "the articles mentioned in said declaration were not lost as a result of any burglary, larceny or theft." The plaintiff joined issue upon the first and second pleas, and replied to the third plea that the articles mentioned were lost as a direct result of burglary, larceny or theft. Issue was joined upon the replication. The case went to trial before a jury and resulted in a verdict and judgment for the plaintiff for $180, and from this judgment the defendant has brought this appeal.

During the course of the trial two exceptions were reserved by the appellant—one to the ruling of the court on a question of evidence, and the other to its ruling on certain prayers, and on a motion to strike out evidence. As the important questions in the case arise under the second exception that will be first considered. The burden was upon the plaintiff to adduce evidence that would satisfy the minds of the jury that the loss of the articles mentioned in the declaration was directly caused by burglary, larceny or theft. The contentions of the appellant are: "There is no evidence in the case legally sufficient to show that the loss of any of the articles mentioned in the declaration was the result of burglary, larceny or theft. There is no evidence in the case legally sufficient to show that the plaintiff ever filed with the defendant any sufficient proof of loss, as required by the policy. There is no evidence in the case legally sufficient to show that the defendant gave immediate notice to the police authorities in regard to the alleged losses." The first contention was submitted to the Court at the close of the testimony of both parties by the defendant's first, second and third prayers, which

the Court refused. Its second contention was presented by its fourth and seventh prayers, which the Court also refused, and by motion to strike out the second proof of loss, which was overruled. Its third proposition was presented by its fifth prayer, which was rejected. By the defendant's sixth prayer, which was granted, the jury were instructed that the burden of proof was upon the plaintiff to establish by a fair preponderance of evidence that the articles which she claims to have lost were lost as the result of burglary, larceny or theft, and that the mere disappearance of the articles was not in itself under the terms of the policy on which the suit was brought sufficient evidence of its loss by burglary, larceny or theft, and unless the jury found some fact or facts offered in evidence in addition to the mere disappearance of the articles mentioned in the evidence that there was some burglary, larceny or theft of the articles alleged to have been lost, their verdict should be in favor of the defendant.

We have set out the facts and circumstances attending the loss of the articles sued for, and we are of opinion that the jury might have reasonably concluded that they were lost by larceny or theft. Indeed, when the number and character of the goods and the circumstances under which they disappeared are considered, it is difficult to account for their loss upon any other hypothesis. The appellant relied upon the cases of *Schindler* v. *U. S. Fidelity and Guarantee Co.,* 109 N. Y. 723; *Gordon* v. *Aetna Indemnity,* 116 N. Y. Sup. 558; *Hart* v. *American Fidelity Co.,* 121 N. Y. Sup. 605, and *Duschenes* v. *National Surety Co.,* 139 N. Y. Sup. 881. These cases announce the correct rule of law applicable to cases of this kind, but if we were disposed to concur with the conclusions reached by the Court upon the facts in each of those cases, we should not regard them as controlling in this case, because in addition to the facts of disappearance of the articles, there are facts, in our opinion, which tend to show that the articles were stolen. The defendant's fourth and seventh prayers attacked the sufficiency of the proofs of loss.

filed by the plaintiff. The fourth asserted that because of the defects in the proof of loss stated in the prayer, the plaintiff was not entitled to recover "for *any* of the articles on account of which the suit was brought;" and by the seventh prayer the Court was asked to tell the jury "that there is no evidence in the case sufficient to show that any sufficient proofs of loss were ever filed by the plaintiff or her agents with the defendant as to the articles mentioned in the first count of the declaration, and therefore there can be no recovery for said articles." It would have been obvious error to have granted either of these prayers: First, because there was evidence tending to show a waiver as to the sufficiency of the first proof of loss; secondly, that the defendant denied its liability for the losses specified in the second proof of loss. Under such circumstances, the law will not permit an insurer to defeat a recovery upon the mere ground of insufficiency of the proofs of loss. It was said in *Spring Garden Ins. Co.* v. *Whayland,* 103 Md. 699: "These preliminary proofs of loss are required for the benefit of the insurer, and for his or its benefit exclusively, in order that the nature, extent and character of the loss may be ascertained. Since this is the case there is no reason why the insurer may not waive a compliance with the provision thus inserted for his or its sole benefit. Indeed, the adjudged cases are numerous in which the proposition just stated has been announced and applied. It is not necessary that an express agreement to waive the preliminary proof should be shown. Such a waiver may be inferred from the acts and conduct of the company, if those acts and that conduct are inconsistent with an intention to insist upon a strict performance of the condition. Good faith demands of an insurance company frank and open dealing with its policyholder, and if there be any withholding or failure to disclose an objection to preliminary proofs beyond a reasonable time after they are furnished, or if a refusal to recognize the obligation to pay a loss be placed on other and distinct grounds than an alleged insufficiency

of, or defects in, the preliminary proofs, the company will be regarded as having waived all objections that could have been taken to such preliminary proofs. These principles have been so repeatedly enforced that they must be regarded as definitely settled in this State and we need not pause to quote from decided cases to support them." In *Bahhaus* v. *Caledonian Ins. Co.,* 112 Md. 676, JUDGE THOMAS, speaking for the Court, said: "Provisions relating to proofs of loss are, as has been stated, inserted in the policy for the exclusive benefit of the insurer, in order that it may be informed of the nature, character and extent of the loss, and while the insurer may stand on its contract and an exact compliance with its terms, there is no reason why these provisions may not be waived by it. The business in which insurance companies are engaged is one in which the security and protection of the insured are largely intrusted to the honesty and fairness of the insurer, and this Court has frequently said that good faith demands of them "frank and open dealing with their policyholders." Any acts or conduct of the insurer, or its representatives, that are, under the circumstances, calculated to mislead the insurer and to induce him to believe that the performance of the condition will not be required, or that proofs of loss would be ineffectual and nugatory, will, if he is thereby misled, amount to a waiver."

Mr. Henry P. Hynson, Jr., who was an attorney for the defendant company and who occupied the position of examiner of claims made against the company, testified that he did not object to the first proof of loss, and his testimony shows that the company had determined to resist the payment of the claim on other and distinct grounds. He said: "I think this explanation is due to the Court and jury. I do not object to the proof of loss *as a proof of loss,* as to its incompleteness; my objection was as to the proof and the evidence that has been brought to my knowledge, which made me deny the claim. * * * Reports made to me by my investigations were of such a nature as to lead me to believe that the articles covered could have been very well given away or

496 FIDELITY & CAS. CO. OF N. Y. vs. DULANY.

Opinion of the Court. [123

stolen, or could have disappeared, and, in fact, there was no direct evidence that there was any theft or loss."

In view of the testimony tending to show a waiver of defects in the proof of loss and of the denial of responsibility under the policy, we are of opinion that the case was fully and fairly submitted to the jury by the defendant's sixth prayer, and that there was no reversible error, under the facts, in overruling the motion to strike out the proof of loss covering the articles lost from the apartment proper. The defendant's fifth prayer was properly refused. It asked the Court to direct a verdict for the defendant, for the reason that the plaintiff had offered no evidence legally sufficient to show that she gave immediate notice to the police authorities in regard to the alleged loss of *any* of the articles. The reason assigned was not supported by the facts. Referring to the articles lost from the storeroom, Mrs. Dulany testified that the police were notified by her husband, and that the detectives visited the premises.

The record contains one bill of exception taken to the ruling of the Court in refusing to admit in evidence a letter from Edgar K. Legg, resident manager of the defendant company, to W. J. C. Dulany, the husband of the plaintiff, dated June 3, 1910. This letter was written more than a year prior to the issuance of the policy sued on, and it was not pretended that it ever came to the knowledge of the plaintiff. It simply informed the husband of the plaintiff that the policy issued by the defendant and referred to in the letter covered "only losses from within your house, and then only when occasioned by the commission of a burglary, theft or larceny." This knowledge was imputed to the plaintiff by the policy sued on, and there was no suggestion that she was not fully aware of the restricted liability under the terms of the policy. The ruling on this exception was correct. It follows that the judgment must be affirmed.

*Judgment affirmed, appellant to pay the costs.*