142 So. 783

ANCHOR FIREPROOFING CO. v. STEWART–McGEHEE CONST. CO. et al.

No. 30760.

May 23, 1932.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for appellee.

OVERTON, J.

The purpose of this suit is to recover $2,913, claimed to be due under a subcontract entered into with defendant, under which plaintiff agreed to furnish the material for and erect all interior gypsum tile and clay tile partition walls in the C. E. Byrd High School Building, in the city of Shreveport. Defendant the Stewart-McGehee Construction Company, who alone will be referred to as defendant, has reconvened for expenses, said to have been incurred by it, due to the failure of plaintiff's work, and due to its incompletion in part, and for penalties claimed against it for delay in delivering the building to the owner, the delay being caused, in

part, by the failure and incompletion of plaintiff's work.

The reconventional demand is itemized as follows: Completion of eight-inch tile wall between auditorium and stage, $363.95; tearing down, reconstructing, and repaving main corridor wall in basement, $1,775.87; delay caused in delivering building, $21,750 —amounting, in all, to $23,889.82.

There is no dispute as to the amount of the subcontract and the ultimate performance by either plaintiff or by defendant acting for plaintiff of the work called for by that contract, and therefore the issues in the case are narrowed down to those of the reconventional demand.

The record leaves no doubt, and no one disputes the fact, that the main corridor wall in the basement of the building began to crack within forty-five days after it had been constructed by plaintiff, and rapidly cracked, in sweeping and irregular cracks, until it became unsightly, though it seems, not unsafe, as the wall supported no weight. The specifications called for this wall to be constructed of gypsum blocks and to be plastered, plaintiff to furnish the material as well as perform the work. When the architect's attention was brought to the cracking of the wall, he wrote defendant, who was the contractor, notifying it that the wall was rejected, and had to be either taken down and rebuilt properly, as specified, or else covered on both sides with ribbed metal laths, of certain specifications, securely fastened to the partition and plastered, lintels to be provided, according to the specifications, above such openings as are otherwise supported. Two days later, the architect wrote defendant advising him that the principal reason for the condition of the partition was the fact that reinforced lintels were not provided above the openings, as specified, and that, although lintels had been provided lately over several of the openings, there are others which even now are not supported except by the door frames.

On receipt of these letters defendant sent them to plaintiff. Plaintiff's president, after visiting the high school, wrote defendant that he was convinced that there was nothing wrong with the materials his company had furnished or with the workmanship, and attributed the cracking to settlement, and to expansion and contraction of the concrete frame at both ends and at the top and bottom of the wall. With this disavowal of his company's responsibility, he advised defendant that, while there, he told its superintendent to proceed and cut out the plaster over the larger cracks, cover them with metal laths and replaster, and that his company would stand the expense, provided it was billed to it weekly. He then reserved the right for his company to cancel the instructions given to defendant's superintendent, at any time his company considered the cost to be running too high, on the ground that his company was in no way to blame for the situation.

Whatever repairing was done on the wall by defendant was not billed to plaintiff weekly. The wall was eventually taken down and rebuilt by defendant, under the supervision of the architect, but notwithstanding this it cracked as badly as did the first wall.

The record suggests several theories why the wall cracked to such an extent as to become unsightly. The clear weight of the evidence, however, shows that the cracking was not due to imperfect material nor to improper

workmanship, but, as found by the trial judge, that gypsum blocks, though often used for partition walls, are unsuitable for such walls of the height and length called for in this building. In short, the defect was one in the specifications.

The architect, who prepared the specifications, and who is reputed to be highly competent, virtually recognizes this in his evidence, for he says that his experience with this and other partition walls in the building has caused him to discard gypsum blocks for such walls, and cites one partition in the building that he caused to be taken out, and had new blocks used in its reconstruction, only to find that before he could get the new partition plastered it cracked again—and this within thirty-six hours—an effect which he attributed to contraction.

This would seem to destroy the theories that the cracking in plaintiff's work was due to the failure to put in re-enforced lintels, in the beginning, over the openings, or that it was due to plaintiff's putting in blocks that had been rained upon, instead of blocks that had not been exposed to the weather. The theory, as to the failure to put in re-enforced lintels, is also destroyed by the fact that the purpose of such lintels was to prevent the slamming of doors from cracking the wall, when, as a matter of fact, the wall cracked before the doors were hung.

The trial court would have rejected this item entirely, instead of nonsuiting defendant as to it, had it not been for the fact that the specifications, which were binding on the subcontractor, required an appeal to be taken to arbitrators. within a given time, if the contractor or subcontractor should not be satisfied with the architect's ruling on any disputed point, and, in this instance, although the architect condemned the wall as being improperly constructed, as appears from his letter, the substance of which is given above, no appeal was taken by plaintiff, and hence, in the judge's view, the ruling, although erroneous, became binding on plaintiff.

This might well be the case, were it not for the fact that, on the trial of the case, the cause of the cracking was fully inquired into, as if no such ruling had been made, thereby waiving the effect that might have been attached otherwise to the ruling. It would be unfortunate now, after such an inquiry, to force plaintiff to abide by the ruling, although its erroneousness has been fully disclosed—and this though the ruling was honestly made.

Plaintiff might be held for such repairs as were made on the wall, notwithstanding its declaration at the time it authorized them that it was not responsible for the condition of the wall, had defendant billed to it weekly, as conditioned, the cost of the repairs as they were being made, to the end that plaintiff might determine whether to proceed further with the repairs, but defendant did not do so. It may be said that the amount sued for on this item exceeds many times the estimated cost of the repairs.

Plaintiff erected the wall out of the material called for by the specifications. The defective condition of the wall was not due to plaintiff's fault. It had no reason to think that the specifications called for material that would prove unsatisfactory in the end. Therefore, the prayer of plaintiff's an-

swer to the appeal that this item be rejected absolutely, instead of nonsuited, should be granted, with the exception of the cost of inserting such re-enforced lintels over the openings as defendant inserted for plaintiff. These lintels were necessary to make the work comply strictly with the specifications. The cost of inserting them, however, which must have been comparatively small, does not appear, and therefore this part of the demand must remain nonsuited.

The evidence concerning the item of $363.-95, sued on in reconvention, for completing the eight-inch tile wall between the auditorium and stage, as pointed out by the trial judge, is too vague and unsatisfactory to justify its allowance. The item was properly nonsuited.

■ As to the item of $21,750 for delay penalties, due to the alleged improper performance of the work by plaintiff, resulting in defendant's inability to deliver the building timely, it may be observed incidentally that defendant herein was cast for only $9,450, instead of $21,750, for sixty-three days' delay in delivering the building, in the case of Stewart-McGhee Construction Co. v. Caddo Parish School Board, 165 La. 200, 115 So. 458. However, that circumstance is not important here, for it affects only a part of the item sued on, when, in truth, the entire item should be rejected absolutely, as was done by the trial court. Much that we have said concerning the responsibility of plaintiff for the partition wall in the basement is applicable here to show that plaintiff is not responsible on this item. Moreover, defendant was granted sixty days' time by the school board from April 7, 1925, which was soon after the trou-

ble with the gypsum blocks arose, within which to complete the building. What little there was to be done by plaintiff at that time, it appears, could easily have been done in far less than sixty days. Plaintiff is not responsible for the delay, and therefore is not liable on this item.

There are repairs to other gypsum partition walls, involved in the evidence, which were constructed by plaintiff, though not mentioned in the pleadings, but what has been said concerning the basement wall applies substantially to the others, and leads to the same general conclusion.

There was judgment below for plaintiff, as prayed for, and further judgment rejecting the item for penalties, sued for by defendant, and nonsuiting the items for the basement and the auditorium walls.

As plaintiff completed its work either directly or through defendant, in accordance with the plans and specifications, it is entitled to recover as decreed by the lower court. The judgment of that court, as indicated in the premises, should be affirmed, with the exception that the item concerning the basement wall should be rejected absolutely, save that part of it for putting in re-enforced lintels, which should be nonsuited, as decreed below.

Accordingly, the judgment appealed from is amended by rejecting absolutely the item for the basement partition wall, except that part of it for furnishing and placing re-enforced lintels, and, in all other respects, the judgment is affirmed; defendants to pay the costs of this appeal.