## CHARLES J. FRANK, INC. v. ASSOCIATED JEWISH CHARITIES OF BALTIMORE, INC.

[No. 127, September Term, 1981.]

*Decided October 7, 1982.*

444

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Charles Yumkas,* with whom were *Anthony P. Palaigos* and *Blum, Yumkas, Mailman & Gutman, P.A.* on the brief, for appellant.

*Searle E. Mitnick,* with whom were *Solomon Kaplan, Daniel S. Katz* and *Kaplan, Heyman, Greenberg, Engelman & Belgrad, P.A.* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

In 1976, the appellant, Charles J. Frank, Inc. (contractor), and the appellee, Associated Jewish Charities of Baltimore, Inc. (owner), entered into a contract for the construction of a Jewish community center (project). The construction contract contained an arbitration clause providing, among other things, that "[a]ll claims, disputes and other matters in question arising out of, or relating to, [the] Contract . . . shall be decided by arbitration in accordance with the . . . Rules of the American Arbitration Association. . . ."

The contractor subcontracted the required earthwork to Consolidated Excavators, Inc. (subcontractor). The subcontract incorporated an arbitration clause identical to that contained in the construction contract.

A dispute arose between the subcontractor and the contractor as to whether the subcontractor's removal of earth from the project's football field was extra work entitling it to additional compensation. In the Circuit Court for Baltimore County, the subcontractor sued the contractor for $10,172.00 (Baltimore County case). The contractor pleaded to the merits and filed a third party claim against the owner alleging that the owner was liable to the contractor for any judgment the subcontractor might recover, as well as for an amount representing the contractor's profit on that portion of the subcontractor's work. The owner filed various pleadings to the third party claim, including a demurrer and an answer. Although the

dispute was arbitrable, no party sought arbitration. Ultimately, the subcontractor, contractor, and owner settled, and on 28 January 1980, a consent judgment was entered.

Subsequently, the contractor demanded the balance of $139,579.11 due under the construction contract. The owner refused to pay because of alleged faulty construction work, unrelated to the earthwork involved in the Baltimore County case. On 31 March 1980, in accordance with the construction contract, the contractor filed a Demand for Arbitration with the American Arbitration Association.

On 15 May 1980, in the Circuit Court of Baltimore City, the owner filed a Petition to Stay Arbitration (Baltimore City case) contending that the contractor had waived its right to arbitration by litigating its third party claim against the owner in the Baltimore County case. Additionally, in the Superior Court of Baltimore City, the owner filed a declaration against the contractor, its surety, and Nelson/Salabes, Inc., the project architect (Superior Court case), seeking damages for alleged faulty construction, design, and supervision. The architect filed a third party claim against the mechanical and electrical engineers, the structural engineers, and the swimming pool designers.

On 20 April 1981, in the Superior Court case, the contractor filed a Motion to Stay Proceedings, alleging that the claims asserted by the owner were issues required to be resolved by arbitration. The contractor's motion to stay was granted, pending resolution of the Baltimore City case. Because the contract between the architect and the owner did not contain an arbitration clause, the Superior Court case against the architect was not stayed. On the same day, 20 April 1981, in the Baltimore City case, the contractor filed a Petition to Order Arbitration.

On 3 June 1981, in the Baltimore City case, the trial court initially determined that the contractor had waived its right to arbitrate those issues resolved in the Baltimore County case. The trial court specifically found that the issues in the Baltimore County case "aside from . . . arising out of the

same contract, [had] no connection with the Superior Court suit or [the contractor's] claim for arbitration." The trial court noted that unless the construction contract contained a clause stating that "waiver for one situation is not waiver as to another," a waiver of the arbitration clause for one purpose would constitute a waiver for all purposes. Accordingly, the trial court then held that by litigating its third party claim against the owner in the Baltimore County case, the contractor had waived the contractual arbitration clause "for all purposes under that contract" and, therefore, had waived its right to arbitrate unrelated issues arising under the same contract with the owner.

Moreover, the trial court acknowledged that were it to order arbitration of such unrelated issues, the owner might be compelled to arbitrate its claim against the contractor and to litigate its claim against the architect because, unlike the contract between the owner and the contractor, the contract between the owner and the architect did not contain an arbitration clause. Emphasizing that the owner had voluntarily entered into these particular contractual arrangements, the trial court specifically concluded that the prospect of duplicative proceedings with a potential for inconsistent results was not an appropriate basis upon which to stay arbitration. Nevertheless, having determined that the contractor had waived its right to arbitrate the unrelated issues raised in the Superior Court case, the trial court granted the owner's petition to stay arbitration and denied the contractor's petition to order arbitration.

The contractor appealed to the Court of Special Appeals. We issued a writ of certiorari before consideration by that Court. We shall reverse the judgment of the Circuit Court of Baltimore City.

The initial question here is whether the contractor, by participating as a party in a judicial proceeding that resulted in a final judgment on an issue arbitrable under its contract with the owner, has waived the right subsequently to arbitrate unrelated issues arising under the contract. Additionally, if the contractor did not waive that right, the remaining question would be whether the owner, then

participating in multiparty litigation, was entitled to an order staying arbitration in order to prevent multiple proceedings with the possibility of inconsistent results.

I

Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them. The Maryland Uniform Arbitration Act, enacted in 1965,[1] now Maryland Code (1974, 1980 Repl. Vol.) §§ 3-201 through 3-234 of the Courts and Judicial Proceedings Article, embodies a legislative policy favoring enforcement of executory agreements to arbitrate. *Aetna Casualty & Sur. Co. v. Insurance Comm'r,* 293 Md. 409, 421, 445 A.2d 14, 19 (1982); *Maietta v. Greenfield,* 267 Md. 287, 291, 297 A.2d 244, 246 (1972); *Bel Pre Medical Center, Inc. v. Frederick Contractors, Inc.,* 21 Md.App. 307, 320, 320 A.2d 558, 565 (1974), *modified,* 274 Md. 307, 334 A.2d 526 (1975).

This Court has recognized that arbitration is a matter of contract which the parties should be allowed to conduct in accordance with their agreement. *C.W. Jackson & Assocs. v. Brooks,* 289 Md. 658, 666, 426 A.2d 378, 382 (1981); *Continental Milling & Feed Co. v. Doughnut Corp. of America,* 186 Md. 669, 675, 48 A.2d 447, 450 (1946). Because the right to arbitrate is a matter of contract, it is possible for parties to waive that right. *See University Nat'l Bank v. Wolfe,* 279 Md. 512, 522, 369 A.2d 570, 576 (1977); *Bargale Indus., Inc. v. Robert Realty Co.,* 275 Md. 638, 643, 343 A.2d 529, 533 (1975); *see also, e.g., Dickinson v. Heinhold Sec., Inc.,* 661 F.2d 638, 641 (7th Cir. 1981); *Tothill v. Richey Ins. Agency, Inc.,* 117 N.H. 449, 453, 374 A.2d 656, 658 (1977).

We have frequently considered the criteria applicable to the waiver of a contractual right. *E.g., Chertkof v. Southland Corp.,* 280 Md. 1, 5, 371 A.2d 124, 127 (1977); *Bargale Indus., Inc.,* 275 Md. at 643-44, 343 A.2d at 533;

---

1. 1965 Md.Laws, ch. 231, § 2.

*Fidelity & Casualty Co. of New York v. Dulany,* 123 Md. 486, 494, 91 A. 574, 576-77 (1914). Thus, in *Bargale Industries, Inc.,* this Court said:

"A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. '[A]cts relied upon as constituting a waiver of the provisions' of a contract must be inconsistent with an intention to insist upon enforcing such provisions." *Bargale,* 275 Md. at 643, 343 A.2d at 533.

The intention to waive must be clearly established and will not be inferred from equivocal acts or language. *Bargale Indus., Inc.,* 275 Md. at 644, 343 A.2d at 533; *see, e.g., Midwest Window Systems, Inc. v. Amcor Indus., Inc.,* 630 F.2d 535, 536 (7th Cir. 1980); *James Julian, Inc. v. Raytheon Serv. Co.,* 424 A.2d 665, 668 (Del.Ch. 1980). Thus, whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case. *Chertkof,* 280 Md. at 5-6, 371 A.2d at 127; *see, e.g., Doers v. Golden Gate Bridge, Highway & Transp. Dist.,* 23 Cal.3d 180, 185, 588 P.2d 1261, 1263, 151 Cal.Rptr. 837, 839 (1979); *Standard Co. of New Orleans v. Elliott Constr. Co.,* 363 So.2d 671, 675 (La. 1978); *REA Express v. Missouri Pacific R.R.,* 447 S.W.2d 721, 727 (Tex.Civ.App. 1969).

This Court has not previously considered the question whether participation as a party in a judicial proceeding constitutes a waiver of the right to arbitrate issues raised and/or decided in that proceeding. Courts in other jurisdictions that have considered the question are divided with respect to the degree of participation necessary to constitute such a waiver.[2] Under the circumstances here, however, we

---

2. Courts in some jurisdictions have determined that the filing of a complaint and/or an answer without a demand for arbitration is inconsistent with the right subsequently to demand arbitration and, therefore, is conduct that ordinarily is sufficient, in and of itself, to establish such a waiver. *E.g.,* Galion Iron Works & Mfg. Co. v. J.D. Adams Mfg. Co., 128 F.2d 411,

need not delineate the precise degree of participation in a court proceeding required to constitute such a waiver. The record shows that in the Baltimore County case, the contractor filed a third party claim against the owner; that the owner filed an answer on the merits; that there was no demand for arbitration; and that the judicial proceeding resulted in a final judgment on an arbitrable matter. The trial court found, the parties concede, and we agree that under such circumstances the contractor waived its right to arbitrate those issues raised and decided in the Baltimore County case. *E.g., Doers,* 23 Cal.3d at 188, 588 P.2d at 1265, 151 Cal.Rptr. at 841; *Jones v. Pollock,* 34 Cal.2d 863, 867, 215 P.2d 733, 735 (1950); *Anchor Fireproofing Co. v. Stewart-McGehee Constr. Co.,* 175 La. 7, 12, 142 So. 783, 784 (1932). Thus, we need now only determine whether that waiver extends to the right to arbitrate other unrelated issues arising under the contract between the contractor and the owner.

While courts in many jurisdictions have decided that some degree of participation in a judicial proceeding constitutes a waiver, only a few courts have considered whether such a waiver is limited to those issues raised and/or decided in the judicial proceeding, or extends to other unrelated issues arising under the contract. Courts in New York have frequently concluded that although a party waives the right to arbitrate contractual issues raised and/or decided in a judicial proceeding, the waiver does not extend to other unrelated issues also arbitrable under the contract. *E.g.,*

413 (7th Cir. 1942); McNeff v. Capistran, 120 Wash. 498, 503, 208 P. 41, 43 (1922); Lawton v. Cain, 172 So.2d 734, 737 (La.Ct.App. 1964), *cert. denied,* 247 La. 1008, 1009, 175 So.2d 299, 300 (1965). Courts in other jurisdictions generally have required a greater degree of participation. *E.g.,* Cordillera Corp. v. Heard, Colo., 612 P.2d 92, 92-94 (1980); DeSapio v. Kohlmeyer, 35 N.Y.2d 402, 405-06, 321 N.E.2d 770, 772-73, 362 N.Y.S.2d 843, 846-47 (1974); REA Express, 447 S.W.2d at 727. Courts in some jurisdictions have concluded that, without a demand for arbitration, participation in a judicial proceeding that results in a final judgment on an issue arbitrable under the contract ordinarily constitutes waiver of the right to arbitrate issues raised and/or decided in the judicial proceeding. *E.g.,* Doers, 23 Cal.3d at 188, 588 P.2d at 1265, 151 Cal.Rptr. at 841; Jones v. Pollock, 34 Cal.2d 863, 867, 215 P.2d 733, 735 (1950); Anchor Fireproofing Co. v. Stewart-McGehee Constr. Co., 175 La. 7, 12, 142 So. 783, 784 (1932).

*Clurman v. Clurman,* 52 N.Y.2d 1036, 1038, 420 N.E.2d 385, 386, 438 N.Y.S.2d 504, 505 (1981); *Denihan v. Denihan,* 34 N.Y.2d 307, 310, 313 N.E.2d 759, 760, 357 N.Y.S.2d 454, 456 (1974); *Dandy Dress, Inc. v. Rae Dress Co.,* 179 Misc. 36, 37, 37 N.Y.S.2d 449, 450 (1942).

In *Denihan v. Denihan,* 34 N.Y.2d 307, 313 N.E.2d 759, 357 N.Y.S.2d 454 (1974), some shareholders demanded arbitration in May 1970 of certain issues arising under the shareholders' agreement. In January and February 1971, while the arbitration was pending, the same shareholders initiated two shareholder derivative actions against the corporation. In March 1971, the arbitration resulted in an award. In January 1972, the same shareholders initiated a third derivative suit. Although the issues in all three suits were arbitrable, no party sought arbitration of those issues. In March 1972, the shareholders made two separate demands for arbitration of other unrelated issues. The corporation initiated a judicial proceeding to stay arbitration.

The Court of Appeals of New York considered "whether by commencing several actions against other parties to the shareholders' agreement on causes arising therefrom, the [shareholders] waived [their] right to arbitrate different issues arising under the same agreement." *Denihan,* 34 N.Y.2d at 309, 313 N.E.2d at 760, 357 N.Y.S.2d at 455. In determining that the right to arbitrate unrelated issues was not waived, the Court said:

"While the claims encompassed in the various arbitrations and actions brought by the respondent may have arisen from the shareholders' agreement, it is not disputed that the claims are separate and distinct. As to the claims sought to be redressed in judicial proceedings, there can be no question but that the respondent has waived his right to arbitrate. *But as to claims separate and distinct, no waiver of arbitration may be implied from the fact that resort has been made to the courts on other claims arising under a common agreement* which remains in full force and effect." *Denihan,* 34

N.Y.2d at 310, 313 N.E.2d at 760-61, 357 N.Y.S.2d at 456 (citations omitted) (emphasis added).

The Supreme Court of Louisiana has reached the same conclusion. In *Standard Company of New Orleans v. Elliott Construction Co.,* 363 So.2d 671 (La. 1978), a contractor subcontracted certain roofing work. The subcontractor sued the contractor for compensation. The contractor filed a third party claim against the owner. While the suit was pending, the contractor demanded arbitration of a claim against the owner involving unrelated issues. In the pending judicial proceeding, a question was raised as to whether the contractor had waived its right to arbitrate the unrelated issues.

While the Supreme Court of Louisiana offered several reasons to support its conclusion that the contractor had not waived its right to arbitrate unrelated issues, it placed primary reliance upon the fact that the issues in the judicial proceeding were separate and distinct from those raised in the arbitration proceeding. There the Court said:

> *"First, the issues in the suit and the claim for equitable adjustment are separate and distinct.* The claims in suit 1802, 491 involved issues of liability and damages in connection with the original roofing and subsequent re-roofing of the Minidome. The claims for equitable adjustment involve issues of liability and damages in connection with interference with construction method and sequence, change in proposal for floorslab delay, misrepresentation about sub-surface conditions, synthetic flooring, and excusable delays necessitating extensions of time." *Standard Co.,* 363 So.2d at 675-76 (emphasis added).

Thus, the Louisiana Court adopted the New York Court's approach and determined, in essence, that although a party to a judicial proceeding involving issues arising under a contract waives the right to arbitrate those issues, the

waiver does not extend to unrelated issues arbitrable under the contract.

We recognize that courts in some jurisdictions have decided that when some degree of participation in a judicial proceeding constitutes a waiver of the right to arbitrate a part of a dispute arising under a contract, the waiver extends to the entire dispute. *E.g., Midwest Window Systems, Inc.,* 630 F.2d at 537; *Gutor Int'l AG v. Raymond Packer Co.,* 493 F.2d 938, 945 (1st Cir. 1974); *Maddy v. Castle,* 58 Cal.App.3d 716, 722, 130 Cal.Rptr. 160, 163 (1976), *disapproved on other grounds, Doers v. Golden Gate Bridge, Highway & Transp. Dist.,* 23 Cal.3d 180, 588 P.2d 1261, 151 Cal.Rptr. 837 (1979); *Seville Condominium #1, Inc. v. Clearwater Dev. Corp.,* 340 So.2d 1243, 1244-45 (Fla. Dist.Ct.App. 1976), *cert. denied,* 348 So.2d 945 (Fla. 1977). However, these courts have reached this conclusion only under circumstances in which all of the parts of the dispute were deemed to be interrelated.

*Maddy v. Castle,* 58 Cal.App.3d 716, 130 Cal.Rptr. 160 (1976), is illustrative. There, a contractor, after completing work under a contract, sued the owner for the unpaid balance of $350. The owner countersued for $4,500 damages for improper performance. The contractor demanded arbitration of the owner's $4,500 claim. The Court of Appeals of California, Second District, concluded that the contractor's action in filing suit constituted a waiver of its right to arbitrate the owner's $4,500 claim. In specifically rejecting the argument that the contractor's waiver was limited solely to its $350 cash claim, the Court said:

> "In a dispute such as this it is impossible to separate the claim for money by respondent from the counterclaims which are the defense to this money claim. *The claim is in actuality part of one basic issue* — whether the work was properly completed — and cannot be separated from other claims or the issue itself." *Maddy,* 58 Cal.App.3d at 722, 130 Cal.Rptr. at 163 (emphasis added).

Thus, the Court held that waiver of a part of the dispute

constituted waiver of the entire dispute because the dispute involved a single issue, not unrelated issues. No case has been cited, and we have found none, in which a court has held that a waiver of the right to arbitrate issues arising under a contract by some degree of participation in a judicial proceeding constitutes a waiver for all purposes under the contract and, therefore, extends not only to issues raised and/or decided in the judicial proceeding, but also to unrelated issues.

In our view, even when participation in a judicial proceeding involving arbitrable issues arising under a contract constitutes a waiver of the right to arbitrate those issues raised and/or decided in the judicial proceeding, such conduct is not necessarily inconsistent with an intention to enforce the right to arbitrate unrelated issues arising under the same contract. Such conduct, in and of itself, is too equivocal to support an inference of an intentional relinquishment of the right to arbitrate issues other than those raised and/or decided in the judicial proceeding. We are persuaded that when a party waives the right to arbitrate an issue by participation in a judicial proceeding, the waiver is limited to those issues raised and/or decided in the judicial proceeding and, absent additional evidence of intent, the waiver does not extend to any unrelated issues arising under the contract. Our conclusion that waiver of the right to arbitrate cannot be inferred in the absence of a clear expression of intent is consonant with Maryland's legislative policy favoring enforcement of executory agreements to arbitrate.

Here the record shows that in the Baltimore County case, the contractor did not demand arbitration, but rather participated as a party in a judicial proceeding that resulted in a final judgment on issues concerning certain earthwork performed by a subcontractor, issues arbitrable under the contract between the contractor and the owner. While such conduct constituted a waiver of the right to arbitrate those issues, it was not necessarily inconsistent with an intention to enforce the right to arbitrate other unrelated issues arising under the same contract with the owner. Such con-

duct was, therefore, too equivocal, in and of itself, to support an inference that the contractor had waived the right to arbitrate issues other than those raised and decided in the Baltimore County case. There was no other probative evidence to show that the contractor intended to waive the right to arbitrate unrelated issues. Under these circumstances, the contractor's conduct did not constitute a waiver of the right to arbitrate unrelated issues arising under its contract with the owner.

The record further shows that after final judgment was entered in the Baltimore County case, the contractor demanded arbitration, and was sued by the owner in the Superior Court case, on issues unrelated to the earthwork involved in the Baltimore County case. Accordingly, the contractor did not waive the right to arbitrate those issues raised in the Superior Court case.

## II

Having determined that the contractor has not waived the right to arbitrate issues arising under the contract unrelated to those raised and decided in the Baltimore County case, the question remaining is whether the owner is otherwise entitled to an order staying arbitration. The record here shows that the owner's contract with the contractor contained an arbitration clause, while its contract with the architect did not. Indeed, provisions requiring arbitration of disputes, appearing in the contract between the owner and the architect, were intentionally deleted. In the Superior Court case, the owner sued the contractor, its surety, and the architect. The architect filed a third party claim against the mechanical and electrical engineers, the structural engineers, and the swimming pool designers. As a result of the owner's voluntary actions, if arbitration were not stayed and the owner were compelled to arbitrate its claim against the contractor, the owner would be required to participate in duplicative arbitration and judicial proceedings with a potential for inconsistent results. Thus, the question to be determined is whether, under these circumstances, the owner was

entitled to a stay of arbitration, a question that has not previously been determined in Maryland.

Only a few courts in other jurisdictions have considered the same or similar questions. Some courts have concluded that, under such circumstances, arbitration should be stayed. *E.g., County of Jefferson v. Barton-Douglas Contractors, Inc.,* 282 N.W.2d 155, 159 (Iowa 1979); *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.,* 308 Minn. 20, 24, 240 N.W.2d 551, 553 (1976); *J.F. Inc. v. Vicik,* 99 Ill.App.3d 815, 820-21, 426 N.E.2d 257, 262 (1981). The rationale underlying this result was set forth in *County of Jefferson v. Barton-Douglas Contractors, Inc.,* 282 N.W.2d 155 (Iowa 1979). There the Supreme Court of Iowa said:

> "The prospect of multiple proceedings carrying a potential for inconsistent findings provides a basis for overriding the freedom to contract for arbitration.
>
> . . .
>
> "Multiple proceedings with a potential for inconsistent results are inevitable unless arbitration is stayed. The policies favoring arbitration and joinder would be subverted rather than served." *County of Jefferson,* 282 N.W.2d at 159.

This rationale was further explicated in *Prestressed Concrete, Inc. v. Adolfson & Peterson, Inc.,* 308 Minn. 20, 240 N.W.2d 551 (1976). There, the Supreme Court of Minnesota said:

> "The basis for the favored status which arbitration usually enjoys in this court — that it generally expedites the settlement of disputes simply, clearly, and inexpensively — just is not present in this case. *Where arbitration would increase rather than decrease delay, complexity, and costs, it should not receive favored treatment." Prestressed Concrete, Inc.,* 308 Minn. at 24, 240 N.W.2d at 553 (emphasis added).

Courts in other jurisdictions have concluded that

arbitration agreements should be enforced and that arbitration should not be stayed in order to avoid the prospect of duplicative proceedings with the potential for inconsistent results. *E.g., C. Itoh & Co. (America) Inc. v. Jordan Int'l Co.,* 552 F.2d 1228, 1231 (7th Cir. 1977); *Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614, 617 (1st Cir. 1975); *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F.2d 711, 715-16 (7th Cir. 1967); *Travel Consultants, Inc. v. Travel Management Corp.,* 367 F.2d 334, 339 (D.C.Cir. 1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 861 (1967); *Madden v. Kaiser Foundation Hospitals,* 17 Cal.3d 699, 714, 552 P.2d 1178, 1188, 131 Cal.Rptr. 882, 892 (1976); *Town of Danvers v. Wexler Constr. Co.,* 1981 Mass.App.Ct.Adv.Sh. 765, 422 N.E.2d 782, 785-86 (1981); *Knolls Coop. Section No. 1 v. Hennessy,* 3 Misc.2d 220, 222-23, 150 N.Y.S.2d 713, 716 (1956). This conclusion is premised upon three rationales.

The first rationale is that the public policy in favor of arbitration would be frustrated if agreements to arbitrate were not enforced. As stated in *Town of Danvers v. Wexler Construction Co.,* 1981 Mass.App.Ct.Adv.Sh. 765, 422 N.E.2d 782 (1981), a case involving a multiparty judicial proceeding:

> "[T]he strong policy in favor of arbitration usually necessitates a stay [of a third party claim pending arbitration] despite the fact that some judicial inefficiency might result. . . . 'If a claim of right to arbitration could be foreclosed whenever a dispute between the parties to the contract derives from another person's claim against one of the parties, the utility of broad arbitration agreements would be undermined.' " *Town of Danvers,* 422 N.E.2d at 785 (footnote omitted) (citations omitted).

The second rationale is that the enactment of the Uniform Arbitration Act evidences a legislative intent that arbitration not be enjoined to prevent multiplicity of actions. This rationale was explicated by the United States Court of Appeals in *Galt v. Libbey-Owens-Ford Glass Co.,* 376 F.2d

711 (7th Cir. 1967), a diversity case in which Illinois State law was applied as follows:

> "Under the Uniform Arbitration Act, as shown by its history, 'the problem of judicial interference with the question of arbitrability was intended to be governed by § 2 . . . .' Section 2(b) of the Illinois Act permits a court to stay an arbitration proceeding 'on a showing that there is no agreement to arbitrate' (Ill.Rev.Stats. 1965, c.10, § 102(b)). Section 2(d) of the Act provides:
>
>> 'Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this Section or, *if the issue is severable,* the stay may be with respect thereto only.'
>>
>> . . .
>
> Section 2(d) of the Illinois Act shows that the Legislature contemplated multiplicity of actions. In enacting the Uniform Arbitration Act, the Legislature has not eradicated a chancellor's inherent powers, but *the Legislature has determined in Section 2 that it is no longer equitable to enjoin arbitration to prevent multiplicity of actions." Galt,* 376 F.2d at 715, 716 (citation omitted) (additional emphasis added).

The third rationale is that it is unfair to deprive a party to an arbitration agreement of its right to arbitrate when the burden of the potential for duplicative proceedings and inconsistent results was created by the voluntary actions of the party that would bear that burden. This rationale was succinctly articulated by the United States Court of Appeals in *Travel Consultants, Inc. v. Travel Management Corp.,* 367 F.2d 334 (D.C. Cir. 1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 861 (1967). There, Judge Leventhal, writing for the majority, said:

"Consultants complains of the burden of pursuing two actions concurrently in two different forums, and asks for a ruling that either all or none of the actions be referred to arbitration. That burden falls on Consultants because it signed two different agreements with the same party, one requiring arbitration, and the other containing no arbitration provision. *Consultants shouldered that burden voluntarily, and we see no basis for judicial interposition.*" *Travel Consultants, Inc.,* 367 F.2d at 339 (emphasis added).

We are persuaded that ordinarily arbitration should not be stayed in order to prevent the prospect for duplicative proceedings with the potential for inconsistent results created by the voluntary actions of a complaining party. We reach this result because it fosters the legislative policy favoring enforcement of executory agreements to arbitrate [3] and is consonant with the legislative policy against enjoining arbitration for the purpose of preventing duplicative, multiple actions.[4] Moreover, to enjoin arbi-

---

3. Md. Code (1974, 1980 Repl.Vol.) § 3-207 of the Cts. & Jud. Proc. Art. provides in pertinent part:

"(a) ... If a party to an arbitration agreement ... refuses to arbitrate, the other party may file a petition with a court to order arbitration.

...

"(c) ... If the court determines that the [arbitration] agreement exists, it *shall* order arbitration." (Emphasis added.)

4. § 3-208 provides in pertinent part:

"(a) ... If a party denies existence of the arbitration agreement, he may petition a court to stay commenced or threatened arbitration proceedings.

...

"(c) ... If the court determines that existence of the arbitration agreement is in substantial and bona fide dispute, it shall try this issue promptly and order a stay if it find for the petitioner. If the court finds for the adverse party, it shall order the parties to proceed with arbitration."

§ 3-209 (b) provides:

"(b) *Severability of issue. — If the issue subject to arbitration is severable, the court may order the stay with respect to this issue only.*" (Emphasis added.)

tration under such circumstances is inherently unfair to a party contractually entitled to arbitration. Accordingly, the owner, whose voluntary actions created the prospect of multiple proceedings with the potential for inconsistent results, is not entitled to an order staying arbitration.

In view of our determination that the contractor did not waive its right to arbitrate the issues raised in the Superior Court case, and that the owner was not entitled to a stay of arbitration in order to prevent the prospect of multiple proceedings with the potential for inconsistent results, we shall reverse the judgment of the trial court that stayed arbitration, and direct that court to enter an order compelling arbitration.

> *Judgment of the Circuit Court of Baltimore City reversed.*
>
> *Case remanded to that Court for the entry of an order in accordance with this opinion.*
>
> *Costs to be paid by appellee.*

---

Section 3-209 (b) shows that when the Legislature enacted the Uniform Arbitration Act, it contemplated duplicative multiple actions and established as a matter of legislative policy that it is inequitable to enjoin arbitration to prevent such actions.