667 A.2d 649

CURTIS G. TESTERMAN COMPANY et al.

v.

Walter E. BUCK, III et al.

No. 45, Sept. Term, 1995.

Court of Appeals of Maryland.

Nov. 24, 1995.

Timothy A. Hodge, Jr. (Edward J. Lopata, Tydings & Rosenberg, on brief), Baltimore, David E. Carey (Brown, Brown & Brown, on brief), Bel Air, for Appellants.

Kenneth F. Spence, III (Daniel Nuzzi, Miles & Stockbridge, on brief), Towson, for Appellees.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

■ Appellants Curtis G. Testerman and Curtis G. Testerman Company appealed to the Court of Special Appeals from a judgment entered by the Circuit Court for Cecil County confirming an arbitration award against both Appellants in favor of Appellees Walter and Gabrielle Buck. We granted certiorari on our own motion prior to review by the intermediate appellate court. Several questions are raised in this appeal. First, whether the trial court erred by compelling Testerman, a non-signatory to the contract at issue, to arbitrate. Second, whether the trial court erred by confirming the arbitrator's award of attorney fees when the arbitration clause in the parties' contract did not contain a provision authorizing an award of attorney fees.[1]

### Facts

This action arises out of a suit instituted by Walter and Gabrielle Buck (the Bucks) in the Circuit Court for Cecil

---

1. Appellant's third contention is that Appellees have no standing because they were not owners of the property from which the contract at issue arose. Appellants cite as evidence a Cecil County Maryland Building Permit naming Frank D. Brown, Jr. as owner. This document, however, is not sufficient to show lack of standing. The evidence was sufficient to prove that the Bucks *do* have standing. The Bucks were not only residents of the property at the time the contract at issue was entered into, but were named on the contract itself as "Owner[s]." We think these factors provide an adequate basis on which the Bucks may maintain this appeal.

County against Curtis G. Testerman Company (the Company) and Curtis G. Testerman (Testerman) individually, seeking damages for, *inter alia*, breach of contract, negligence and violation of the Consumer Protection Act (CPA), Maryland Code, (1975, 1990 Repl.Vol., 1995 Supp.), Commercial Law Article, §§ 13–301 through 13–501. The underlying dispute involved construction work performed by the Company pursuant to a construction contract (the contract) signed by the Bucks as Owner and the Company as Contractor.[2] The contract called for the construction of an addition to the Bucks' house and various other home improvements. The Bucks filed suit after the Company allegedly failed to complete the work within the time called for by the contract.

The Company moved to compel arbitration pursuant to the arbitration agreement in the contract between the parties. Section 10.8 of the contract provides in pertinent part:

"All claims or disputes between the Contractor and the Owner arising out or relating to the Contract, or the breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect unless the parties mutually agreed otherwise and subject to an initial presentation of the claim or dispute to the Architect as required under Paragraph 10.5. * * * The award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

The circuit court granted the Company's motion and ordered the Bucks and the Company to arbitrate their dispute. Testerman then filed a motion to dismiss the complaint against him individually claiming that he was not a party to the contract and was not personally liable for the acts of the corporation. The court denied Testerman's motion to dismiss and, pursuant to the Buck's motion to compel Testerman into

---

**2.** American Institute of Architects Abbreviated Form of Agreement Between Owner and Contractor (AIA Document A107–1987) was signed by the Bucks and the Company.

arbitration, ruled that Testerman was bound by the arbitration clause in the contract.

The Company, Testerman and the Bucks entered into arbitration. As a result, the arbitrator awarded the Bucks $65,-607.00 in damages and $20,753.75 in attorney fees and held the Company and Testerman jointly and severally liable. The trial judge confirmed the arbitrator's award and entered final judgment in favor of the Bucks. Both Testerman and the Company noted their appeal to the Court of Special Appeals. We granted certiorari prior to review by that court.

We are asked by Appellants Testerman and the Company to determine the following issues:

    I.  Whether one who is neither a party to the arbitration agreement nor a signatory of the underlying contract can be bound by an arbitration award.

    II.  Whether an arbitrator has the authority to award attorney fees when the contract between the parties did not provide for the recovery of attorney fees in the event of a dispute but the CPA, under which claimants also sought recovery, authorizes attorney fees to be awarded by a "court."

For the reasons set forth below, we answer "no" to both questions. Accordingly, we reverse and hold that the trial court erred as a matter of law.

## I.

Testerman first challenges the trial judge's order compelling him to join the Company and the Bucks in arbitration. Testerman does not dispute that he might be held personally liable for any negligence in which he participated, but contends that he cannot be forced to arbitrate his liability since he never agreed to resolve disputes through arbitration. Testerman argues that the contract and its accompanying arbitration clause were entered into by the Company only, not by him individually. He claims he signed the contract on behalf of the Company as its president, not in his individual

capacity. Thus, Testerman argues that he cannot be bound by a provision to which he did not agree.

The contract names the contractor as "Curtis G. Testerman, Inc." and was signed in the following manner:

OWNER                           CONTRACTOR

/s/
/s/ _____     /s/ _____
(Signature)                     (Signature)

Walter Buck                     Curtis G. Testerman, Inc.
Gabrielle Buck                  Curtis G. Testerman, President
_____         _____
(Printed name and title)        (Printed name and title)

---

### A.

The Bucks argue that since the contract was executed in the name of "Curtis G. Testerman, Inc." instead of "Curtis G. Testerman Company," the actual corporate name, Testerman entered into the contract on behalf of "an unincorporated entity and apparently unregistered trade name" and is therefore personally liable. We find no merit in this contention.

The circuit court found that the use of "Inc." instead of "Company" was a misnomer and therefore, "the company [wa]s the valid party to the contract." Further, the record discloses no allegations that the Bucks thought they were contracting with Testerman in his individual capacity. The use of the term "Inc." indicates corporate status. *See* Md. Code (1975, 1993 Repl.Vol., 1995 Supp.) Corporations and Associations Art., § 2–106(a) (corporate status is indicated if the name contains certain words or abbreviations including "Company" or "Incorporated"). Thus, we conclude the Bucks knew that they were dealing with a specific corporation.

We cannot allow the Bucks to use a simple misnomer in the corporate name to hold Testerman personally liable. We believe that "[a] mistake in setting out the name of a corporation in an instrument is not fatal where the identity of the corporation is apparent." 7 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations

§ 3014, at 149 (perm. ed. rev. vol. 1988). *See In re Goldville Mfg. Co.*, 118 F. 892, 896 (1902) ("If the contract is expressed in writing and the identity of the corporation can be ascertained from the instrument itself, the misnomer is wholly unimportant."), *aff'd, William Firth Co. v. South Carolina Loan & Trust Co.*, 122 F. 569 (4th Cir.1903); *Seaboard Commercial Corp. v. Leventhal*, 120 Conn. 52, 178 A. 922 (1935) ("[I]n case of a misnomer of a corporation in a ... written contract if there is enough expressed to show that there is such an artificial being and to distinguish it from all others, the corporation is sufficiently named...."). *Cf. Dart Drug Corp. v. Hechinger Co.*, 272 Md. 15, 28, 320 A.2d 266, 274 (1974) (assumed that the use of the name Dart Drug, Inc. instead of the actual corporate name, Dart Drug Corporation, on complaint was a "misnomer" and not fatal to plaintiff's case). Clearly, the identity of the corporation, Curtis G. Testerman Company, could be ascertained from the face of the contract and was apparent to the Bucks.

We hold that the trial judge in the instant case correctly ruled that the use of "Inc." was a misnomer and that "the [Curtis G. Testerman] [C]ompany [wa]s the valid party to the contract." Thus, the misnomer that appeared on the face of the contract is not sufficient to release the corporation from liability leaving Testerman, the Company's agent, personally liable on the contract.

### B.

In the alternative, the Bucks argue that Testerman, either as agent or corporate officer of the Company, is personally liable for and subject to the provisions of the contract, i.e., the arbitration clause. We disagree.

First, if Testerman signed the contract on behalf of the Company, a disclosed principal, he cannot be held personally liable as an agent. The rule in Maryland is clear that "if an agent fully discloses the identity of his principal to the third party, then, absent an agreement to the contrary, he is insulated from liability. However, this is subject to exception

when the purported principal that is disclosed is nonexistent or fictitious; or when the principal is legally incompetent." *A.S. Abell Co. v. Skeen*, 265 Md. 53, 56, 288 A.2d 596, 597–98 (1972) (citations omitted). Further, when, "upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, *the stipulations of the contract are to be considered as solely to bind the principal*" unless otherwise intended. *Burkhouse v. Duke*, 190 Md. 44, 46–47, 57 A.2d 333, 334 (1948) (emphasis added) (citation omitted). *See also Ace Development Co. v. Harrison*, 196 Md. 357, 366, 76 A.2d 566, 570 (1950) ("[W]hen an official or agent signs a contract for his corporation it is simply a corporate act. It is not the personal act of the individual, and he is not personally liable for the corporate contract unless the matter is tainted by fraud...."). [3] Consequently, "[s]igning an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally." *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir.1988).

Here, Testerman clearly signed the contract as an agent for a disclosed principal. The contract identifies a corporation as the contractor, both in the heading and the signature page. Moreover, the signature line containing Testerman's signature is captioned by the title "President." These facts suggest that Testerman signed the agreement in a representative capacity and that the Bucks were well aware that Testerman was acting as an agent for the Curtis G. Testerman Company. Therefore, Testerman is not bound by the arbitration clause in the contract as an agent.

Alternatively, the Bucks argue that because Testerman, as a corporate officer, may be liable for the torts of the corporation in which he has participated, he can be compelled to participate in arbitration. It is settled that officers of a corporation is personally liable for *torts* of the corporation in which they actively participated. *Metromedia v. WCBM Ma-*

---

3. The Bucks did not allege fraud in their complaint nor do they raise the issue on appeal.

*ryland,* 327 Md. 514, 520, 610 A.2d 791, 794 (1992). The rule is clear, however, that an officer is not personally liable *on an agreement* when there is no evidence in the record that the officer intended to assume the obligation. *See Security Ins. Co. v. Mangan,* 250 Md. 241, 245, 242 A.2d 482, 485 (1968).

> "In modern times most commercial business is done between corporations, everyone in business knows that an individual stockholder or officer is not liable for his corporation's engagements unless he signs individually, and where individual responsibility is demanded the nearly universal practice is that the officer signs twice—once as an officer and again as an individual. There is great danger in allowing a single sentence in a long contract to bind individually a person who signs only as a corporate officer.

*Salzman Sign Co. v. Beck,* 10 N.Y.2d 63, 217 N.Y.S.2d 55, 57, 176 N.E.2d 74, 76 (1961). Since Testerman can only be held liable in tort and not on the contract as an officer of the Company, he cannot be subject to the contract's provisions, i.e., the arbitration clause. Thus, the only way that Testerman can be compelled to arbitrate is if an agreement to arbitrate exists between the Bucks and Testerman in his individual capacity.

### C.

The Maryland Uniform Arbitration Act, Md.Code (1974, 1995 Repl.Vol.), Courts & Judicial Proceedings Art., §§ 3–201 through 3–234, mandates that "[i]f the opposing party denies existence of an arbitration agreement, the court shall proceed expeditiously to determine if the agreement exists." Section 3–207(b). The Arbitration Act leaves but one issue for the court to resolve: "is there an agreement to arbitrate?" *Bel Pre Med. v. Frederick Contr.,* 21 Md.App. 307, 320, 320 A.2d 558, 566 (1974), *aff'd,* 274 Md. 307, 334 A.2d 526 (1975). *See also Holmes v. Coverall North America, Inc.,* 336 Md. 534, 649 A.2d 365 (1994) (court's involvement extends only to determination of existence of arbitration agreement). *Accord AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 656 (1986)

("the question of arbitrability ... is undeniably an issue for judicial determination"). Since Testerman opposed the Bucks' motion to compel arbitration on the basis that an agreement between them did not exist, the trial judge was vested with authority to decide this issue. The trial judge, believing that "there w[ere] enough allegations made to keep him in the case," ordered Testerman to participate in arbitration with the Bucks and the Company.

We hold that although there may have been "enough allegations" to hold Testerman liable, the trial judge erred by forcing Testerman to litigate his liability in an arbitral forum. Arbitration is a "process whereby *parties voluntarily agree* to substitute a private tribunal for the public tribunal otherwise available to them.   * * *   A party cannot be required to submit any dispute to arbitration that it has not agreed to submit." *Gold Coast Mall v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91, 95 (1983) (emphasis added). *Accord United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960). Arbitration is "consensual; a creature of contract. As such, only those who consent are bound.   * * *   In the absence of an express arbitration agreement, no party may be compelled to submit to arbitration in contravention of its right to legal process." Thomas J. Stipanowich, *Arbitration and the Multiparty Dispute: The Search for Workable Solutions,* 72 Iowa L.Rev. 473, 476 (1987) (citing *Martin K. Eby Constr. Co. v. City of Arvada,* 522 F.Supp. 449, 451 (D.Colo.1981)). *Accord Messersmith, Inc. v. Barclay Townhouse,* 313 Md. 652, 658, 547 A.2d 1048, 1051 (1988) (" 'No one is under a duty to resort to ... [arbitral] tribunals, however helpful their processes, except to the extent that he has signified his willingness.' ") (citation omitted). An arbitration agreement cannot impose obligations on persons who are not a party to it and do not agree to its terms.[4]   *See A.B. Engineering Co. v. RSH*

---

4. Section 10.8 of the parties' contract in the case *sub judice* provides in pertinent part:

*Intern., Inc.,* 626 F.Supp. 1259, 1263 (D.Md.1986). Hence, if Testerman was not a party to the agreement or underlying contract, he cannot be bound by the arbitration provision.

The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis. *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 328, 301 A.2d 12, 18 (1973). *See also Crown Oil v. Glen,* 320 Md. 546, 558, 578 A.2d 1184, 1189 (1990). Here, it seems apparent that the Bucks and the Company never intended for the contract to bind Testerman individually. Had they so intended, Testerman would have signed his name twice—once as an officer and again as an individual. *See Salzman, supra.* Testerman, however, signed solely in his representative capacity. Further, there is ample evidence that the Bucks knew they were contracting solely with a corporation. Based upon a totality of the circumstances, it is clear that the parties to the contract were intended only to be the Bucks, as Owner, and the Company, as Contractor, and as a result, Testerman did not individually agree to arbitrate.

In their brief, the Bucks argue that both the Federal and Maryland Arbitration Acts [5] "express a policy favoring arbitration" and that "arbitration clauses are to be read liberally, with all doubts resolved in favor of arbitration." The Bucks' theory, however, fails in that an arbitration clause is only "liberally read" when an arbitration agreement in fact exists. *See McCarthy v. Azure,* 22 F.3d 351, 355 (1st Cir.1994) (The liberal policy "does not extend to situations in which the identity of the parties who have agreed to arbitrate is un-

---

"Except by written consent of the person or entity sought to be joined, *no arbitration arising out of or relating to the Contract Documents shall include,* by consolidation, joinder or in any other manner, *any person or entity not a party to the Agreement under which such arbitration arises....*" (Emphasis added).

5. We may rely on decisions interpreting the Federal Arbitration Act when construing our own Maryland Arbitration Act. *Holmes v. Coverall North America, Inc.,* 336 Md. 534, 541, 649 A.2d 365, 368 (1994).

clear."); *A.B. Engineering Co.,* 626 F.Supp. at 1263 ("[N]o matter how broadly an agreement is construed, it cannot impose obligations on a person who is not a party to that agreement.").

### D.

Finally, the Bucks cite in their brief numerous cases in support of the proposition that an arbitration agreement can be enforced against non-signatories or non-parties to the agreement. The Bucks' reliance on these cases, however, is misplaced. Many of the cases involved federal statutes and principles which are inapplicable to the facts in the instant case.[6] For example, under certain circumstances, some non-signatories to an arbitration agreement, such as successor corporations of original parties to the arbitration agreement, may be made parties to the arbitration proceedings. In addition, in many of the cases cited by the Bucks, it was a party to the arbitration agreement who objected to the non-party or non-signatory asking to, or agreeing to, join in arbitration.[7] *See Pritzker v. Merrill Lynch, Pierce, Fenner & Smith,* 7 F.3d 1110 (3rd Cir.1993) (non-signatory agent's liabil-

6. *See, e.g., Lee v. Chica,* 983 F.2d 883 (8th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 287, 126 L.Ed.2d 237 (1993). *Lee,* cited by the Bucks, compelled a non-signatory to arbitrate with the contracting parties to the agreement, but can be distinguished on grounds that it applied federal substantive law which differed from state law in that it made claims against non-signatory agents of a brokerage firm arbitrable. In addition, the Eighth Circuit found that the plain language of the relevant arbitration clause revealed an *intention* on the part of the parties to make the non-signatory agent's liability arbitrable. We find no similar intention in the arbitration clause in the instant case.

7. *Interpool Ltd. v. Through Transport Mut. Ins.,* 635 F.Supp. 1503 (S.D.Fla.1985) and *Dist. Moving & Stg. v. Gardiner & Gardiner,* 63 Md.App. 96, 492 A.2d 319 (1985), *aff'd,* 306 Md. 286, 508 A.2d 487 (1986), cited by the Bucks, bound a non-signatory to an arbitration agreement but did so on the basis of the nonsignatory's third-party beneficiary status. The rationale was that the third-party beneficiary should not be able to benefit from the other parties' agreement without also being made to abide by its obligations, including arbitration. The Bucks did not raise the issue of whether Testerman was a third-party beneficiary, nor would we find merit in the contention.

ity held arbitrable over objection by party to arbitration agreement); *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100 (2nd Cir.) (active and voluntary participation in arbitration by employees manifested a clear intent to arbitrate the dispute albeit impliedly), *cert. denied*, 502 U.S. 910, 112 S.Ct. 305, 116 L.Ed.2d 248 (1991); *Arnold v. Arnold Corp.*, 920 F.2d 1269, 1281 n. 10, 1282 (6th Cir.1990) ("[T]he non-signatory defendants indicated that they wished to submit the dispute to arbitration and agreed that they would be bound by the decision of the arbitrator." Further, the court found that "the language of the arbitration agreement indicate[d] that the [signatory] parties' basic intent was to provide a single arbitral forum to resolve all disputes...."); *Federated Dept. Stores v. J.V.B. Industries*, 894 F.2d 862 (6th Cir.1990) (contractor's parent corporation and alter ego could voluntarily join in arbitration even though it was not a party to the construction contracts); *Letizia v. Prudential Bache Securities, Inc.*, 802 F.2d 1185, 1188 (9th Cir.1986) (broker's employees, non-signatories to the arbitration agreement, permitted to join in arbitration as defendants over plaintiff customer's objection; broker had "clearly indicated its intention to protect its employees through its Customer Agreement"); *Mosca v. Doctors Associates, Inc.*, 852 F.Supp. 152 (E.D.N.Y.1993) (defendant employees sought to join in arbitration as agents of defendant corporation over plaintiff's objection); *Scher v. Bear Stearns & Co., Inc.*, 723 F.Supp. 211 (S.D.N.Y.1989) (employee of brokerage firm sought to join in arbitration asserting that employer's Customer Agreement, including the arbitration clause, covered claims against employees); *Marchetto v. De-Kalb Genetics Corp.*, 711 F.Supp. 936 (N.D.Ill.1989) (federal law permitted successor corporations to join in arbitration under arbitration clause in contract to which they were non-signatories); *Brener v. Becker Paribas Inc.*, 628 F.Supp. 442 (S.D.N.Y.1985) (granting nonsignatory employee of brokerage firm's motion to join in arbitration); *Crown Oil v. Glen, supra,* (successor corporation, who assumed corporation's obligations under the contract, allowed to join in arbitration over the objection of a party to the agreement); *Paine, Webber, Jack-*

*son & Curtis v. McNeal,* 143 Ga.App. 579, 239 S.E.2d 401 (1977) (allowing employee of a party to the arbitration agreement to participate in arbitration although not a signatory to employer's contract over plaintiff customer's objection). In the instant case, Testerman, the non-signatory to the arbitration agreement, did not ask or agree to be joined in arbitration with the contracting parties. Further, it is Testerman, the non-party, who objects to being compelled to arbitrate, not a party to the agreement itself. Testerman has a right to have his liability litigated in a judicial forum unless he otherwise waives that right. Clearly, he has not so waived.

*Matter of Keystone Shipping and Texport Oil,* 782 F.Supp. 28 (S.D.N.Y.1992), which the Bucks also cite in their brief, does not support their position. In that case, the court refused to allow Keystone Shipping Corporation, a non-signatory to the arbitration agreement, to participate in arbitration. The district court held that, "[b]ecause Keystone signed the agreement for its disclosed principal . . ., Keystone [wa]s not a party to the agreement and ha[d] no authority to enforce the arbitration clause." *Keystone,* 782 F.Supp. at 32.

The Bucks focus on *Keystone's* recognition of four circumstances where a non-signatory may be bound by an arbitration clause: (1) if the corporate veil is pierced to hold the party bound as the alter ego; (2) if there is a common bill of lading that expressly incorporates another contract's arbitration clause; (3) if an agreement to arbitrate is implied through the conduct of the parties; and (4) "under certain circumstances, a *non-signatory may enforce* an arbitration agreement contained in a contract that it signed on behalf of its principal." *Keystone,* 782 F.Supp. at 30–32 (emphasis added). The *Keystone* court flatly rejected all four scenarios as inapplicable to the facts of its case.

Similarly, we find that none of the four scenarios discussed in *Keystone* applies to the case before us. First, there is nothing in the record to indicate that Testerman was an alter ego of the company. Second, there was no contract or bill of lading between the Bucks and Testerman that could have been

incorporated into the agreement at issue. Third, there is no indication of an implied agreement to arbitrate. Finally, *Keystone* states only that *the non-signatory may enforce* an arbitration agreement as agent. It does not hold that a party to the agreement can enforce the arbitration clause *against a non-signatory.*

Lastly, the Bucks failed to address case law in direct contradiction to their position. A large body of law supports the proposition that a non-signatory or non-party to an arbitration agreement *cannot* be forced to arbitrate disputes against their will. For example, in *Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the United States Supreme Court recognized that persons may be parties to the underlying dispute but not to the arbitration agreement. The Court noted that the dispute cannot be sent to arbitration without both parties' consent when a signed arbitration agreement does not exist. *Moses H. Cone Memorial Hosp.,* 460 U.S. at 19–20, 103 S.Ct. at 939, 74 L.Ed.2d at 782. Under such circumstances, a plaintiff may be forced to resolve related disputes in different forums— arbitration for one and a court of law for the other—but the Supreme Court found no problem with that result because "the relevant federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement." *Moses H. Cone Memorial Hosp.,* 460 U.S. at 20, 103 S.Ct. at 939, 74 L.Ed.2d at 783.

In *Flink, supra,* a securities brokerage house, Goldman, Sachs & Co., sought to compel its registered representative, Flink, into arbitration with itself and a customer. Flink argued that he could not be compelled to arbitrate because he was not a party to the agreement. The Court of Appeals for the Eighth Circuit agreed. The court held:

> "Beginning from the axiom that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit,' there are no grounds to compel Flink to arbitrate Goldman, Sachs' claims before the AAA.

First, Flink is not a party to the letter agreements. Flink did not sign the cash account letter at all. His signature appears on the margin account letter, but the blank he signed is titled 'For Goldman, Sachs & Co. use only' and is thus labeled to show that it is not for the purpose of binding a party to an agreement with customer, but rather for some informational purpose of Goldman, Sachs. At any rate, Flink signed the margin account letter as 'Registered Representative Receiving Account'; even if Flink's signature had not been labeled as 'For Goldman, Sachs & Co. use only' and had instead indicated assent to the terms of the letter, it would only have had the legal effect of binding Goldman, Sachs, not Flink personally. Signing an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally.

\* \* \* \* \* \*

[T]hey could not bind him without Flink manifesting his agreement in some way.

\* \* \* \* \* \*

Goldman, Sachs also makes policy arguments about the possibilities of inconsistent results and the inefficiency of having two proceedings instead of one, and raises the spectre of wide-spread disruption of securities industry arbitration. The short answer to all these arguments is that we cannot order Goldman, Sachs' two adversaries to arbitrate in the same forum without contracts binding them to do so. The Goldman, Sachs form contracts at issue here simply did not provide for the result Goldman, Sachs desires. If Goldman, Sachs has painted itself into two corners of the same room, it was with its own brushes." (Citations omitted).

*Flink,* 856 F.2d at 46–47.

Similarly, the Third Circuit, in *Kaplan v. First Options of Chicago, Inc.,* 19 F.3d 1503 (3rd Cir.1994), *aff'd,* —— U.S. ——, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), refused to compel a nonsignatory to an arbitration agreement to arbitrate. There,

MKI, an options market maker, and its clearing house, First Options, executed four documents to settle a dispute that arose as a result of a deficit suffered by MKI. Only one of the four documents was signed by Mr. Kaplan, MKI's president, and his wife in their individual capacity. The other three documents were signed by MKI and First Options alone, one of which contained an arbitration clause. First Options argued that the Kaplans were bound to arbitrate because, *inter alia*, the four documents, read together, evidenced the Kaplans' agreement to arbitrate. While agreeing to construe the four documents together, the court found no agreement to arbitrate in the only document signed by the Kaplans as individuals. The Third Circuit, therefore, refused to bind the Kaplans to arbitration. The court held that the Kaplans never assumed overall responsibility for MKI's obligations. The court noted that because the Kaplans' responsibility was based on contract and not on agency principles, they could not be bound by a contract arbitration provision to which they did not agree. *Kaplan*, 19 F.3d at 1515. The *Kaplan* court stated:

> "Arbitration was not among the obligations the Kaplans assumed.... * * * If First Options' argument were accepted, every agent of a party who agrees to arbitrate would have to arbitrate individual obligations assumed independently of the contract of agency."

*Kaplan*, 19 F.3d at 1515–16.

In *ATSA of California, Inc. v. Continental Ins. Co.*, 702 F.2d 172 (9th Cir.1983), the Ninth Circuit held that an officer of the ATSA corporation could not be ordered to submit to arbitration because his separate contract with the client did not have an arbitration clause. 702 F.2d at 176. Only the contract between ATSA and the client contained such a provision. Further, the court held that the officer could not be required to arbitrate based upon the agency relationship existing between him and ATSA because the relationship was disclosed to the client. *Id.*

Finally, the First Circuit in *McCarthy, supra*, went so far as to bar a *willing* corporate officer, Azure, who signed an

arbitration agreement in his representative capacity, from arbitrating claims made against him as an individual. The court found

"no overt indication that the parties intended to commit claims against [Azure], *as an individual,* to an arbitral forum. After all, [Azure] signed the Purchase Agreement solely in his capacity as an agent for a disclosed principal.... [I]t is settled beyond peradventure that a person signing a contract only in a corporate capacity, and unambiguously indicating that fact on the face of the contract documents, does not thereby become a party to the agreement."

*McCarthy,* 22 F.3d at 356.

The court noted that there are certain agency principles under which non-signatories can be bound by agreements signed by others, and cited many of the same cases cited by the Bucks in the instant case. *Id.* The *McCarthy* court, however, rejected these principles as "comparing apples to oranges." 22 F.3d at 357. In the cases that gave a non-signatory the benefit of an arbitration clause, the courts found that the intention of the parties was that the arbitration provision should cover the non-signatories. *Id.* Conversely in *McCarthy,* the court found that the arbitration clause failed to indicate such a clear intention.

The court ultimately held that:

"[I]t is difficult to see how a lawsuit between the seller and a nonsignatory who is not a successor in interest to the buyer's rights can be said to 'aris[e] under' the Purchase Agreement. Thus, [Azure's] effort to compel [McCarthy] to arbitrate cannot succeed, for, 'as a matter of contract, no party can be forced to arbitrate unless that party has entered an agreement to do so.'" (Citation and footnote omitted).

*McCarthy,* 22 F.3d at 359. Likewise, we cannot find that the parties in the instant case intended to bind Testerman to the terms of the agreement.

We think the evidence, taken as a whole, compels the conclusion that Testerman was not a party to the arbitration agreement between the Company and the Bucks and did not consent to arbitrate disputes as to his personal liability. We fail to see any basis to force Testerman, a non-party and non-signatory to the arbitration agreement, to arbitrate. Accordingly, it was error for the trial judge to compel Testerman to join the Bucks and the Company in arbitration.

## II.

The next issue the Company raises involves the arbitrator's award of attorney fees to the Bucks. The Company objects to this award because the arbitration clause in the contract did not authorize the awarding of attorney fees. The Maryland Uniform Arbitration Act vests the arbitrator with authority to award attorney fees only if the parties so agreed. Md.Code (1974, 1995 Repl.Vol.), Courts & Judicial Proceedings Art., § 3–221(b), provides that *"[u]nless the arbitration agreement provides otherwise, the award may not include counsel fees."* (Emphasis added). Here, the arbitration clause in the contract did not contain such a provision.

Nonetheless, the Bucks contend that they can recover attorney fees because one of the claims submitted to arbitration was based upon the Consumer Protection Act (CPA), Md.Code (1975, 1990 Repl.Vol., 1995 Supp.), Commercial Law Art., §§ 13–101 through 13–501, which authorizes attorney fee recovery. We disagree.

We note initially that the issue of whether the CPA claim is subject to arbitration is not before this Court. The Company requested arbitration of all claims including the CPA claim. The Bucks contend that the CPA claim as well as the CPA provision allowing a successful claimant to recover attorney fees are arbitrable. The Company does not contest the arbitrability of the CPA claim; it only contests the arbitrability of the attorney fee provision of the CPA. Section 13–404(a) provides, "[n]otwithstanding any other provision of this title,

the Division [8] may enter into an agreement with a person in the State to submit a dispute arising under this title to arbitration in accordance with the Maryland Uniform Arbitration Act." Because the issue is not raised, we need not consider to what extent the CPA authorizes the arbitration of a private cause of action pursuant to an arbitration clause in a standard construction contract.

The Arbitration Act vests an arbitrator with authority to award attorney fees only if the contract providing for arbitration so authorizes. The CPA provides for the awarding of attorney fees by a court: "Any person who brings an action to recover for injury or loss under this section and who is awarded damages may also seek, and the *court may award,* reasonable attorney's fees." § 13–408(b) (emphasis added). There is a potential conflict with the arbitrator's authority under the Uniform Arbitration Act, which gives an arbitrator authority to award attorney fees *only* if authorized by agreement of the parties, and the CPA, which gives a "court" authority to award attorney fees to a claimant who is awarded damages under the CPA.

We should not disregard the words, *"the court may award"* in § 13–408(b) of the CPA. We believe that the legislature intended to give authority only to a "court" to award attorney fees pursuant to the CPA. Clearly a "court" would have authority to award attorney fees to a successful CPA claimant even if the CPA claim was decided in arbitration. We do not believe the legislature intended to give an arbitrator authority to award attorney fees in a CPA claim where the claim is arbitrable pursuant to an agreement that does not authorize an award of attorney fees.

The contract at issue did not contain a provision authorizing attorney fees. Thus, we hold that the arbitrator was without authority to grant such an award under the CPA. The issue of whether attorney fees should be awarded under the CPA

---

8. "Division" refers to the Division of Consumer Protection of the Office of Attorney General. Maryland Code (1975, 1990 Repl.Vol.), Commercial Law Article, § 13–101(e).

was not an issue the arbitrator could decide. It was therefore error for the trial judge to confirm the arbitration award of attorney fees.

## III.

We find that the trial court erred as a matter of law on both issues. First, the trial court erred in compelling Testerman to arbitrate his individual liability with the Company and the Bucks because, as a non-party and non-signatory to the contract, he did not agree to arbitrate. Consequently, the Bucks will have to litigate Testerman's individual liability in the circuit court. Second, it was error for the trial court to confirm the arbitrator's award of attorney fees under the CPA because the contract did not contain a provision authorizing an award of such fees. Accordingly, we reverse.

*JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPEL-LEE.*