882 A.2d 288

**QUESTAR HOMES OF AVALON, LLC**

v.

**PILLAR CONSTRUCTION, INC., et al.**

**No. 145, Sept. Term, 2004.**

Court of Appeals of Maryland.

Sept. 9, 2005.

676

Robert L. Ferguson, Jr. (Kimberly T. Owens of Ferguson, Schetelich & Ballew, P.A., Baltimore), on brief, for appellant.

Andres K. O'Connell (John A. Rego of Anderson & Quinn, LLC, Rockville), on brief, for appellees.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

CATHELL, J.

The case before us involves the propriety of Circuit Court Orders staying all litigation between a general contractor, Questar Homes of the Avalon Courtyard, LLC ("Questar"), appellant, plaintiff in a third-party complaint, and forty third-party defendant subcontractors and suppliers, appellees,[1] pending arbitration proceedings where it is evident that certain of those forty third-party defendants may never have agreed to arbitrate with Questar, waived their right to arbitration, chose to litigate their claims in lieu of arbitration, or never had the right to initiate arbitration. Questar presents one question for our review:

"Did the trial court err when it compelled arbitration and stayed all litigation between appellant and all forty appellees after hearing arguments on only two appellees' motions to dismiss without regard to whether the remaining thirty-eight appellees moved to compel arbitration, waived their right to arbitration, or had no right to arbitration?"

We hold that the Circuit Court erred when in its Orders it directed that all litigation stemming from Questar's third-party complaint be stayed between Questar and all third-party defendants pending the outcome of arbitration. While the Orders were correct in effect as to the two third-party defendants that brought the motions to dismiss and petitions to compel arbitration, it appears that numerous other third-party defendants in the suit, for whatever reasons, either waived, relinquished or never possessed a right to demand arbitration.

---

1. While the forty third-party defendants comprise the appellees in this appeal, it was only appellee Pillar Construction, Inc. that filed a brief on appeal concerning the decision of the Circuit Court to order arbitration and stay all litigation. Counsel for Questar stated at oral argument that the other "active appellees" were served with Questar's brief pertaining to the appeal now before this Court, but chose not to respond.

## I. Procedural History and Background

Questar is in the business of residential and commercial construction. It acted as the general contractor during the construction of a residential single-family home community in Baltimore County known as Avalon Courtyard Homes. On June 3, 2003, after completion of Avalon Courtyard Homes by Questar, the Council of Unit Owners of the Avalon Courtyard Homes Condominium, Inc. ("Council of Unit Owners") filed suit in the Circuit Court for Baltimore County against six defendants, including Questar, alleging that the named defendants defectively designed and constructed Avalon Courtyard Homes. Specifically, the Council of Unit Owners alleged (1) negligence; (2) breach of implied warranties under Md.Code (1974, 2003 Repl.Vol.), § 10–203 and § 11–131 of the Real Property Article; (3) negligent misrepresentation; (4) violation of the Maryland Consumer Protection Act; (5) breach of express warranty; (6) breach of contract; and (7) negligent repairs against Questar.[2]

In response to the Council of Unit Owners' claim against it, Questar filed, on December 3, 2003, a third-party complaint seeking indemnity and/or contribution from the forty subcontractors, suppliers and manufacturers that performed various work and furnished a variety of housing goods during the construction of Avalon Courtyard Homes.[3] Of these forty

---

**2.** The record indicates that the Council of Unit Owners has settled its claims against Questar in the underlying action to this appeal.

**3.** The forty third-party defendants were listed in the docket entries as follows: (1) American Painting and Drywall Contractors; (2) Barber & Ross Company; (3) Benefield Electric Company, Inc.; (4) Brothers Roofing Company; (5) Burja Construction, Inc.; (6) Caliber Homes, Inc.; (7) Capital Concrete Foundations, Inc.; (8) Carey Insulation; (9) Charles A. Klein & Sons, Inc.; (10) Charles J. Miller, Inc.; (11) CSS, LLC; (12) D & R Construction, Inc.; (13) Frank's Painting; (14) Gutter Masters, Inc.; (15) Hayes, Inc.; (16) Horizons Unlimited Home Improvements, Inc.; (17) J.H. Kim Associates, Inc.; (18) Kenash, Inc.; (19) Louis Badolato, Inc.; (20) Maryland Insulation, Inc.; (21) Modern Foundations, Inc.; (22) MLC Foundation Coating Company, Inc.; (23) New Cut Construction, Inc.; (24) Pagoda Siding Company, Inc.; (25) Pillar Construction, Inc.; (26) Pride Painting Contractors, Inc.; (27) Prompt, Inc.; (28) SMS Corporation; (29) Southern Painting Contrac-

third-party defendants named in the suit, thirty-seven of them had entered into identical subcontract agreements with Questar to perform certain work and labor for the construction of Avalon Courtyard Homes. These subcontract agreements contained the following arbitration clause:

"**16. Arbitration:** All claims, disputes and other matters in question arising out of, or related to, this Subcontract, or the breach thereof, and not resolved pursuant to the other provisions of this Subcontract, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining, unless the parties mutually agree otherwise. At Contractor's option, the parties to the arbitration shall be entitled to pre-hearing discovery in accordance with the Federal Rules of Civil Procedure. The response time to discovery shall be fifteen (15) days after receipt rather than the time allotted by the Rules. This agreement to arbitrate shall be enforceable pursuant to and interpreted under the laws of the State of Maryland. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with the applicable law in any court having jurisdiction thereof. Subcontractor shall be liable for Contractor's expenses, including costs and attorneys' fees, should it be necessary for Contractor to enforce its rights, including its right to arbitration, under this Paragraph."

Of the three remaining third-party defendants, the record indicates that no arbitration agreement existed between Questar and M.I. Home Products, Inc., a manufacturer of windows, and that Questar's purchase contracts with Barber & Ross

---

tors; (30) Spafford Construction Company, Inc.; (31) Strong Custom Interiors, LLC; (32) Sun Ventures Contracting, Inc.; (33) T.C. Custom Painting; (34) T.F. & M., Inc.; (35) Tigerstar Construction, Inc.; (36) W.S. Simms Contracting, Inc.; (37) Wayne Drywall Company, Inc.; (38) Gregory & Lewis, Inc.; (39) M.I. Home Products, Inc.; and (40) Specialty Screen & Window Company. For clarity, we shall continue to identify these numerous third-party defendants with the same docket numbers assigned in the Circuit Court.

Company and Specialty Screen & Window Company, both suppliers of construction materials, contained a separate arbitration provision, which granted to Questar the right to demand arbitration but contained no provision granting the supplier the right to demand arbitration:

"**16. Disputes:** Supplier expressly agrees that in the event there is any dispute between Supplier and Contractor relating to or arising from this Purchase Contract, it shall seek resolution of such dispute only in the courts of the State of Maryland in and for the county in which Contractor has, at the time suit is commenced, its principal place of business in the State of Maryland. In the event that Supplier institutes a suit respecting any such dispute, Contractor shall have the right, within 30 days from the date upon which such suit is first served on Contractor, to have the matters raised in such suit referred to arbitration and the lawsuit stayed pending the outcome of arbitration proceedings. Contractor may seek resolution of any dispute between Contractor and Supplier, either by filing suit in the courts of the State of Maryland, in and for the county in which Contractor has its principal place of business or, at Contractor's option, by referring the matter to arbitration. Upon Contractor's election to have a Supplier initiated suit stayed and the matters therein referred to arbitration or upon Contractor's referring a matter to arbitration, it is agreed that such matters shall be submitted to arbitration and decided by an arbitration panel in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining. This agreement to arbitrate shall be enforceable pursuant to and interpreted under the laws of the State of Maryland. The award rendered by the arbitrators shall be final and judgment may be entered upon such award in accordance with the applicable law in any court having jurisdiction thereof. For the purpose of this paragraph 16, a dispute shall include any claim, demand or other matter in question arising out of or relating to this Purchase Contract or the breach thereof."

In reaction to Questar's third-party complaint against them, fifteen of the third-party defendants filed a motion to dismiss or petition to compel arbitration pursuant to the terms of the subcontract and purchase agreements.[4] Questar thereafter invited these fifteen third-party defendants to enter into a stipulation, to be filed with the Circuit Court, wherein Questar conceded the existence of the arbitration clause in the pertinent subcontract and purchase agreements and agreed, pending arbitration, to stay its claims against those third-party defendants entering into the stipulation. Ten of those fifteen third-party defendants entered into this stipulation.[5]

Of the remaining five third-party defendants that filed a motion to dismiss or petition to compel arbitration, two of them, namely, Louis Badolato, Inc. and Sun Ventures Contracting, Inc., withdrew their motions, intending to waive the arbitration provision and litigate the case in the Circuit Court. Two others, Pillar Construction, Inc. ("Pillar") and Wayne Drywall Company, Inc. ("Wayne Drywall"), opted to argue their motions before the Circuit Court rather than enter into the stipulation with Questar.

On August 30, 2004, Pillar and Wayne Drywall argued their motions to dismiss Questar's third-party claims and to order arbitration before the Circuit Court. The court heard argument from counsel for Questar, Pillar and Wayne Drywall.

---

4. The fifteen third-party defendants that filed motions to dismiss or petitions to compel arbitration were: (2) Barber & Ross Company; (5) Burja Construction, Inc.; (7) Capital Concrete Foundations, Inc.; (13) Frank's Painting; (17) J.H. Kim Associates, Inc.; (19) Louis Badolato, Inc.; (21) Modern Foundations, Inc.; (22) MLC Foundation Coating Company, Inc.; (25) Pillar Construction, Inc.; (26) Pride Painting Contractors, Inc.; (31) Strong Custom Interiors, LLC; (32) Sun Ventures Contracting, Inc.; (36) W.S. Simms Contracting, Inc.; (37) Wayne Drywall Company, Inc.; and (38) Gregory & Lewis, Inc.

5. The third-party defendants with which Questar entered into a stipulation to stay its claims against that party pending arbitration were: (2) Barber & Ross Company; (5) Burja Construction, Inc.; (7) Capital Concrete Foundations, Inc.; (13) Frank's Painting;(17) J.H. Kim Associates, Inc.; (22) MLC Foundations Coating Company, Inc.; (26) Pride Painting Contractors, Inc.; (31) Strong Custom Interiors, LLC; (36) W.S. Simms Contracting, Inc.; and (38) Gregory & Lewis, Inc.

That same day, following the conclusion of counsels' arguments, the Circuit Court issued two Orders, both of which stated:

## "ORDER/RULING

Having read Third–Party Defendant's Motion to Dismiss Third–Party Complaint and Petition for Order to Arbitrate, and after a hearing on the motion held on August 30, 2004, it is this 30th day of August, 2004, by the Circuit Court for Baltimore County hereby,

ORDERED, that the Third–Party Defendant's Motion is hereby DENIED, and it is further,

ORDERED, that the Third–Party Plaintiff commence arbitration proceedings; and it is further,

ORDERED, that all litigation between Third–Party Plaintiffs and Third–Party Defendants in the instant matter be stayed until the conclusion of the arbitration proceedings."

Questar, contending that the Orders of the Circuit Court were overbroad in that they improperly stayed all litigation between Questar and each third-party defendant in favor of arbitration, thereafter appealed the decision of the Circuit Court to the Court of Special Appeals. On March 11, 2005, prior to consideration by the Court of Special Appeals, we issued a Writ of Certiorari to address this contention. *Questar v. Pillar,* 385 Md. 511, 869 A.2d 864 (2005).

## II. Standard of Review

As we recently observed in *Walther v. Sovereign Bank,* 386 Md. 412, 872 A.2d 735 (2005):

"A trial court's order to compel arbitration constitutes a final appealable judgment. *See Horsey v. Horsey,* 329 Md. 392, 403, 620 A.2d 305, 310–11 (1993) (stating that 'an order compelling the parties before the trial court to submit their dispute to arbitration, thereby denying all relief sought in the trial court and terminating the action there, is a final

appealable judgment'); *see also Litton Bionetics v. Glen Constr. Co.,* 292 Md. 34, 437 A.2d 208 (1981).

"Our role in reviewing the trial court's order to compel arbitration ' "extends only to a determination of the existence of an arbitration agreement." ' *Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 645, 824 A.2d 87, 95 (2003) (quoting *Holmes v. Coverall North America, Inc.,* 336 Md. 534, 546, 649 A.2d 365, 370–71 (1994)). The trial court's conclusion as to whether a particular dispute is subject to arbitration is a conclusion of law, which we review *de novo. See Wells v. Chevy Chase Bank, F.S.B.,* 363 Md. 232, 250, 768 A.2d 620, 629–30 (2001)."

*Id.* at 422, 872 A.2d at 741.

### III. Discussion

As our decision as to whether the Circuit Court's Orders were in error shall rest in part upon the fundamental concepts of the existence of agreements to arbitrate between Questar and the third-party defendant subcontractors and suppliers, we are inclined yet again to reiterate the law relating to agreements to arbitrate as it exists in Maryland.

█ The statutory principles concerning such agreements are found in Md.Code (1974, 1998 Repl.Vol.), §§ 3–201 to 234 of the Courts and Judicial Proceedings Article, otherwise known as the Maryland Uniform Arbitration Act ("MUAA"). § 3–234. It "expresses the legislative policy favoring enforcement of agreements to arbitrate," *Allstate Ins. Co. v. Stinebaugh,* 374 Md. 631, 641, 824 A.2d 87, 93 (2003), by giving the courts jurisdiction to enforce arbitration agreements and enter judgments on arbitration awards. § 3–202; *see also Holmes v. Coverall North America, Inc.,* 336 Md. 534, 546, 649 A.2d 365, 371 (1994) (stating that the "scope of the court's involvement follows from our recognition of the legislative intent to favor arbitration"); *Charles J. Frank, Inc. v. Associated Jewish Charities, Inc.,* 294 Md. 443, 454, 450 A.2d 1304, 1309 (1982). The MUAA gives a party to an arbitration agreement the ability to compel the other party, or parties, to arbitration by

requesting an order from the courts. § 3–207. The courts must then "stay any action or proceeding involving an issue subject to arbitration," where a petition to arbitrate has been filed or an order to arbitrate has been made. § 3–209. The principal requirement, however, is that an arbitration agreement between the parties must exist.

 Without an agreement to arbitrate, the MUAA does not apply and the court is not allowed to stay the proceedings or require either party to submit to arbitration. Furthermore, an arbitration panel lacks jurisdiction in the absence of an arbitration agreement. *Stinebaugh,* 374 Md. at 645, 824 A.2d at 96; *see also United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) (the Court, interpreting the federal Labor Management Relations Act, stated that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"); *Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 103, 468 A.2d 91, 95 (1983) ("[a] party cannot be required to submit any dispute to arbitration that it has not agreed to submit."). As a result, the Circuit Court could not require M.I. Home Products Inc., the manufacturer that did not have an arbitration agreement, to submit to arbitration or deny Questar the right to litigate any claims against that third-party defendant.

 An agreement to arbitrate is just that, an agreement, and therefore must be consensual. As Judge Battaglia stated for this Court in *Stinebaugh:*

"Arbitration is 'consensual; a creature of contract.' *Curtis G. Testerman Co. [v. Buck,* 340 Md. 569, 579, 667 A.2d 649, 654 (1995) ]. As such, '[a] party cannot be required to submit any dispute to arbitration that it has not agreed to submit,' *id.,* and '[t]he intention of the parties controls on whether there is an agreement to arbitrate.' *Crown Oil [and Wax Co. v. Glen Constr. Co., Inc.,* 320 Md. 546, 558, 578 A.2d 1184, 1189 (1990) ]. Further … we have recognized that rights and obligations under contracts may be discharged by

subsequent agreements. *See, e.g., Calabi v. Government Employees Ins. Co.,* 353 Md. 649, 653, 728 A.2d 206, 208 (1999) (stating that a settlement agreement is 'an agreement to discharge a preexisting claim'); *Linz v. Schuck,* 106 Md. 220, 234, 67 A. 286, 290 (1907) (stating that modification is 'an abandonment of the original contract and the creation of a new contract')."

*Stinebaugh,* 374 Md. at 648, 824 A.2d at 97 (alterations added) (some citations omitted). As is made clear in the record of the case *sub judice,* thirty-seven of the forty named third-party defendants had entered into subcontract agreements with Questar that contained explicit agreements to arbitrate any dispute arising out of or relating to those contracts. Two other third-party defendants, Barber & Ross Company and Specialty Screen & Window Company, entered into purchase contracts whereby Questar, at its option, could seek to have any dispute arising between it and these suppliers referred to arbitration.[6] When a dispute did arise, occasioned by Questar's filing of its third-party complaint against those forty entities in the Circuit Court, it was at that time that the third-party defendant subcontractors had a right to seek redress in the Circuit Court by petitioning that court to order arbitration under § 3–207 of the Courts and Judicial Proceedings Article, thereby enforcing their agreements to arbitrate. *See Walther,* 386 Md. 412, 447–48, 872 A.2d 735, 756.

 Due to the contractual nature of arbitration agreements, the parties have the option to waive their right to arbitration. *Charles J. Frank, Inc.,* 294 Md. at 448, 450 A.2d at 1306; *Gold Coast Mall, Inc.,* 298 Md. at 108, 468 A.2d at 98; *see also Univ. Nat'l Bank v. Wolfe,* 279 Md. 512, 522, 369 A.2d 570, 576 (1977) (stating that there is a "well settled rule that the parties [to a contract] by their conduct may waive the requirements of [the] written contract") (alterations added); *BarGale Indus., Inc. v. Robert Realty Co.,* 275 Md. 638, 643,

---

6. We do not address the validity of the unilateral right to arbitrate. *See Cheek v. United Healthcare of the Mid–Atlantic, Inc.,* 378 Md. 139, 835 A.2d 656 (2003).

343 A.2d 529, 533 (1975). Waiver, however, "must be clearly established and will not be inferred from equivocal acts or language. Whether there has been a waiver of a contractual right involves a matter of intent that ordinarily turns on the factual circumstances of each case." *Gold Coast Mall, Inc.,* 298 Md. at 109, 468 A.2d at 98; *see Charles J. Frank, Inc.,* 294 Md. at 449, 450 A.2d at 1307; *BarGale Indus., Inc.,* 275 Md. at 644, 343 A.2d at 533; *Canaras v. Lift Truck Servs., Inc.,* 272 Md. 337, 360–61, 322 A.2d 866, 878–79 (1974). In the case *sub judice,* it appears that many of the third-party defendants, with a right to arbitration, did not take such action. Of the fifteen third-party defendants that *did* seek to enforce their agreements to arbitrate, however, ten of those parties later voluntarily entered into a stipulation with Questar whereby Questar agreed to stay its claims against those third-party defendants pending arbitration and two other third-party de fendants chose to withdraw their motions to compel arbitration, choosing instead to litigate their claims in the judicial forum.

When Questar filed its third-party complaint in the Circuit Court against the numerous subcontractors, Questar most likely initiated a waiver of its own right to seek enforcement of the agreements to arbitrate that it had entered into with thirty-nine of the forty third-party defendants. *See Charles J. Frank, Inc.,* 294 Md. at 450, 450 A.2d at 1307 (waiver of agreement to arbitrate by contractor where contractor "filed a third party claim against the [project] owner; that the owner filed an answer on the merits; that there was no demand for arbitration; and that the judicial proceeding resulted in a final judgment on an arbitrable matter") (alteration added); *Gold Coast Mall, Inc.,* 298 Md. at 114, 468 A.2d at 101 (stating that landlord's assertion of claim in trial court, rather than invoking an agreement to arbitrate that existed between landlord and tenant, "constituted a refusal to arbitrate"). Counsel for Questar acknowledged at oral argument that its filing of the third-party complaints against those subcontractors and suppliers with whom it had agreements to arbitrate initiated a waiver of that agreement on Questar's part.

■ Because Pillar and Wayne Drywall chose not to enter into the stipulation with Questar and instead chose to advance their motions to dismiss Questar's third-party complaint as against them and to petition the Circuit Court for an order of arbitration, it follows that whatever the outcome was in the Circuit Court it would pertain only to those two third-party defendants. Thus, we agree with Questar that the Circuit Court erred when it, under the language of its August 30, 2004 Orders, ordered "that all litigation between Third–Party Plaintiffs and Third–Party Defendants in the instant matter be stayed until the conclusion of the arbitration proceedings," when in fact it is evident that certain of those forty third-party defendants either: (1) possessed no contractual right to arbitration [7]; (2) waived their right to arbitration [8]; (3) chose to litigate their claims in lieu of invoking their right to arbitration; or, (4) in respect to the two third-party defendant suppliers, because Questar never exercised any right it had under the purchase contracts to refer its disputes with these suppliers to arbitration, had no right to arbitration. The Circuit Court should have confined the reach of its Orders to those parties that were arguing before it demanding arbitra-

---

7. As stated, *supra*, M.I. Home Products, Inc. is the sole third-party defendant named by Questar in its third-party complaint that entered into a contract with Questar that contained no agreement to arbitrate amongst it provisions.

8. There is some argument by Questar in its brief as to whether a substantial number of the forty third-party defendants waived their rights to arbitration by inaction or otherwise. *See Stinebaugh*, 374 Md. at 646, 824 A.2d at 96 (stating that " 'an inappropriate delay in demanding arbitration acts as a relinquishment of the contractual right to compel such a proceeding' ") (citation omitted). Because we today hold that the August 30, 2004 Orders should only have effect upon the parties that argued the petitions to compel arbitration, Pillar and Wayne Drywall, there is no reason for us to address whether certain of the third-party defendants did waive their rights to arbitrate, especially considering that the record before this Court is woefully inconclusive with respect to these third-party defendants. Such matters concerning waiver would best be resolved, at least initially, by the Circuit Court, as they involve "a matter of intent that ordinarily turns on the factual circumstances of each case." *Charles J. Frank, Inc.*, 294 Md. at 449, 450 A.2d at 1307.

tion and not fashioned its Orders to stay *all* litigation between Questar and *all* of the third-party defendants.

We are aware, and the parties seem to agree in their briefs, that there is no real dispute between Pillar and Questar on this point. In fact, Questar itself states that it "does not dispute the Circuit Court's action in compelling arbitration between [Questar] and those appellees that (1) had a right to arbitration and (2) properly invoked that right" (alteration added). This statement obviously refers to the two third-party defendants that chose not to enter into the stipulation with Questar but instead continued to pursue their petitions to compel arbitration in the Circuit Court—Pillar and Wayne Drywall. Our judgment in essence gives both the arguing appellee and appellant what they ask, *i.e.*, Pillar gets to have its dispute heard in an arbitral setting as is appropriate given its agreement to arbitrate and the Circuit Court's Order staying all litigation between Questar and all third-party defendants is scaled back as to effect only those particular parties that petitioned the Circuit Court to compel arbitration, namely, appellees Pillar and Wayne Drywall.

**EXCEPT AS TO APPELLEES PILLAR AND WAYNE DRYWALL, JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED, OTHERWISE IT IS AFFIRMED. COSTS TO BE PAID 50% BY QUESTAR HOMES OF THE AVALON COURTYARD, LLC AND 50% BY PILLAR CONSTRUCTION, INC.**